U.S. Court of Appeals Docket No. 23-15847
N.D. Cal. Docket No. 1:22-cv-05725-RMI

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

―――――――――――――――――――

CORRINE MORGAN THOMAS, *et al.*,
*Plaintiffs and Appellants,*

v.

COUNTY OF HUMBOLDT, *et al.*,
*Defendants and Appellees.*

―――――――――――――――――――

### DEFENDANTS-APPELLEES' RESPONSIVE BRIEF

―――――――――――――――――――

On Appeal From Order
of the United States District Court
for the Northern District of California
The Honorable Robert M. Illman, Magistrate Judge

―――――――――――――――――――

MICHAEL G. COLANTUONO, State Bar No. 143551
mcolantuono@chwlaw.us
PAMELA K. GRAHAM, State Bar No. 216309
pgraham@chwlaw.us
JOHN A. ABACI, State Bar No. 166493
jabaci@chwlaw.us
**COLANTUONO, HIGHSMITH & WHATLEY, PC**
670 West Napa Street, Suite F
Sonoma, California 95476
Telephone: (707) 986-8091
Facsimile: (707) 509-7295
Attorneys for Appellees COUNTY OF HUMBOLDT, et al.

1

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION AND SUMMARY OF ARGUMENT ..................... 13

I. FACTUAL AND PROCEDURAL BACKGROUND ............... 14

   A. Humboldt's Cannabis Regulations ............................... 14

   B. The Thomases Resolve their Violations ..................... 18

   C. Graham Resolves His Violations ................................ 22

   D. Efforts Continue to Resolve Olson's Violations ....... 26

   E. Glad's Violations Continue ........................................ 29

II. STANDARDS OF REVIEW ......................................... 32

III. THE ORDER'S EVIDENTIARY BASIS WAS PROPER ........... 33

   A. Challengers Did Not Preserve the Issue .................... 34

   B. Claims the Trial Court Did Not "Clearly" Specify Noticed Facts Ignores the Lengthy Order .................................. 35

   C. Incorporation by Reference Was Proper .................... 36

   D. Judicial Notice Was Not An Abuse of Discretion ................... 37

IV. THE CLAIMS FAIL PROCEDURALLY .................................. 40

   A. The Claims Are Untimely .......................................... 40

     1. Facial challenge to the cannabis regulations is time-barred ........ 40

     2. As-applied claims came more than two years after Challengers knew of them .................................................... 41

     3. The continuing harm theory does not apply ................. 42

   B. Challengers' Claims Are Unripe; They Lack Standing ........... 44

     1. The County made no final determination ..................... 45

     2. The excessive fines claim is also unripe ......................... 48

   C. Challengers Redundantly Sue County Employees ................. 51

V. THE CLAIMS FAIL SUBSTANTIVELY, TOO ......................... 53

   A. The Procedural Due Process Claim Fails .................... 53

1. Challengers identify no property interest ...................................... 53

2. The County gave adequate notice and opportunity for hearing. 56

3. There was no improper delay........................................................ 59

4. Challengers face no loss until they exhaust administrative appeals ......................................................................................... 62

B. The Substantive Due Process Claim Also Fails ....................... 63

1. Challengers allege no egregious conduct ...................................... 65

2. The cannabis regulations have rational basis................................ 68

C. The Alleged Exactions Were Constitutional ............................ 69

1. Permits are not unconstitutional exactions .................................. 71

2. Settlement conditions serve the public health, safety, and welfare........................................................................................ 72

3. Administrative fines are not unconstitutional exactions............. 75

D. The Excessive Fines Claim Fails................................................ 76

1. The Excessive Fines Clause does not apply to remedial measures ...................................................................................... 76

2. The proposed fines are not disproportionate................................ 77

E. There is No Jury Right in Administrative Hearings ................ 81

VI. REASSIGNMENT ON REMAND IS UNWARRANTED ....... 82

VII. CONCLUSION AND DISPOSITION ....................................... 83

STATEMENT OF RELATED CASES ...................................................... 85

FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS 9TH CIR. CASE NUMBER 23-15847........................................................................ 86

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Action Apt. Ass'n, Inc. v. Santa Monica Rent Ctrl. Bd.,*
  509 F.3d 1020 (9th Cir. 2007) ................................................................. 40

*Aiona v. Judiciary of State of Hawaii,*
  17 F.3d 1244 (9th Cir. 1994) ................................................................... 60

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .................................................................................. 32

*Atlas Roofing Co. v. OSHRC,*
  430 U.S. 442 (1977) ........................................................................... 81, 82

*Austin v. U.S.,*
  509 U.S. 602 (1993) .................................................................................. 76

*Ballinger v. City of Oakland,*
  24 F.4th 1287 (9th Cir. 2022) .......................................................... 70, 76

*Barron v. Reich,*
  13 F.3d 1370 (9th Cir. 1994) ................................................................... 38

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) .................................................................................. 59

*Bennis v. Michigan,*
  516 U.S. 442 (1996) .................................................................................. 77

*Bird v. Dept. of Human Servs.,*
  935 F.3d 738 (9th Cir. 2019) ............................................................ 42, 43

*Bogan v. Scott-Harris,*
  523 U.S. 44 (1998) .................................................................................... 51

4

*Branch v. Tunnell*,
  14 F.3d 449, 454 (9th Cir. 1994)............................................................. 36

*Brandon v. Holt*,
  469 U.S. 464 (1985) ............................................................................. 51

*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*,
  149 F.3d 971 (9th Cir. 1998)................................................................ 53

*Brittain v. Hansen*,
  451 F.3d 982 (9th Cir. 2006)................................................................ 65

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*,
  824 F.3d 1156 (9th Cir. 2016)............................................................. 33

*Cinevision Corp. v. City of Burbank*,
  745 F.2d 560 (9th Cir. 1984)................................................................ 52

*Circu v. Gonzales*,
  450 F.3d 990 (9th Cir. 2006)................................................................ 56

*Cleveland Bd. of Educ. v. Loudermill*,
  470 U.S. 532 (1985) ............................................................................. 56

*Colony Cove Prop., LLC v. City of Carson*,
  640 F.3d 948 (9th Cir. 2014)................................................................ 37

*Davies v. Grossmont Union High Sch. Dist.*,
  930 F.2d 1390 (9th Cir.1991)............................................................... 72

*Dolan v. City of Tigard*,
  512 U.S. 374 (1994) ....................................................................... 74, 75

*Emmert Indus. Corp. v. City of Milwaukie, Or.*,
  307 F. App'x 65 (9th Cir. 2009)........................................................... 73

*Evon v. Law Offices of Sidney Mickell*,
  688 F.3d 1015 (9th Cir. 2012)............................................................. 82

*Flynt v. Shevin*,
    940 F.3d 457 (9th Cir. 2019)............................................................ 43, 44

*Fuentes v. Shevin*,
    407 U.S. 67 (1972) ................................................................................ 47

*Galbraith v. County of Santa Clara*,
    307 F.3d 1119, 1121 (9th Cir. 2002)................................................... 36

*Gilligan v. Jamco Dev. Corp.*,
    108 F.3d 246 (9th Cir. 1997)................................................................ 33

*Giuliani v. Springfield Twp.*,
    238 F.Supp.3d 670 (E.D. Pa. 2017)..................................................... 67

*Gonzales v. Raich*,
    545 U.S. 1 (2005) ........................................................................... 65, 80

*Graham v. Connor*,
    490 U.S. 386 (1989) .............................................................................. 64

*Guatay Christian Fellowship v. County of San Diego*,
    670 F.3d 957 (9th Cir. 2011)......................................................... *passim*

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982) .............................................................................. 52

*Harris v. Cnty. of Orange*,
    682 F.3d 1126 (9th Cir. 2012).............................................................. 39

*AE ex rel. Hernandez v. Cnty. of Tulare*,
    666 F.3d 631 (9th Cir. 2012)................................................................ 32

*Herrington v. County of Sonoma*,
    857 F.2d 567 (9th Cir. 1988)................................................................ 44

*Highway Materials, Inc. v. Whitemarsh Twp.*,
    386 F. App'x 251 (3d Cir. 2010) .......................................................... 67

*Hoehne v. County of San Benito*,
   870 F.2d 529 (9th Cir. 1989).................................................. 46

*Jackson Water Works, Inc. v. Pub. Utils. Com.*,
   793 F.2d 1090 (9th Cir. 1986).............................................. 81

*Johnson v. City of Grants Pass*,
   72 F.4th 868 (2023)....................................................... 50, 77

*Jones v. Flowers*,
   547 U.S. 220 (2006) ............................................................ 58

*Kennerly v. United States*,
   721 F.2d 1252 (9th Cir. 1983)........................................ 56, 82

*Kentucky v. Graham*,
   473 U.S. 159 (1985) ........................................................... 51

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018)...................................... *passim*

*Kinzli v. City of Santa Cruz*,
   818 F.2d 1449 (9th Cir. 1987)............................................. 46

*Knick v. Township of Scott, Pennsylvania*,
   ___ U.S. ___, 139 S.Ct. 2162 (2019) ................................. 47

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005).............................................. 37

*Koontz v. St. Johns River Water Mgmt. Dist.*,
   570 U.S. 595 (2013) .............................................. 70, 74, 75

*Kuzinich v. Santa Clara County*,
   689 F.2d 1345 (9th Cir. 1982).............................................. 52

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001)................................................ 39

*Louisiana Pacific Corp. v. Beazer Materials & Services, Inc.*,
842 F.Supp. 1243 (E.D. Cal. 1994) ...................................... 73

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ....................................................... 44

*United States ex rel. Lujan v. Hughes Aircraft Co.*,
243 F.3d 1181 (9th Cir. 2001)............................................ 32

*MacDonald, Sommer & Frates v. Yolo County*,
477 U.S. 340 (1986) ....................................................... 47

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ....................................................... 57

*Metroflex Oceanside LLC v. Newsom*,
532 F.Supp.3d 976 (S.D. Cal. 2021) .................................... 64

*Monell v. New York City Dept. of Social Services*,
436 U.S. 658 (1978) ....................................................... 51

*Nollan v. California Coastal Comm'n*,
483 U.S. 825 (1987) ................................................... 74, 75

*North Pacifica LLC v. City of Pacifica*,
526 F.3d 478 (9th Cir. 2008)............................................. 68

*In re NVIDIA Corp. Securities Litigation*,
768 F.3d 1046 (9th Cir. 2014)............................................ 37

*Pimentel v. City of Los Angeles*,
974 F.3d 917 (9th Cir. 2020)......................................... 78, 80

*Ramos v. Nielsen*,
321 F.Supp.3d 1083 (N.D. Cal. 2018) .................................. 55

*Rasmussen v. Garrett*,
489 F.Supp.3d 1131 (D. Or. 2020)....................................... 55

*RK Ventures, Inc. v. City of Seattle*,
    307 F.3d 1045 (9th Cir. 2002) .................................................... 41, 42, 43

*Robinson v. United States*,
    586 F.3d 683 (9th Cir. 2009) ................................................................ 32

*S.E.C. v. Ross*,
    504 F.3d 1130 (9th Cir. 2007) ............................................................. 56

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ......................................................... 32, 33

*Sampson v. Cty. of Los Angeles by & through Los Angeles Cty.*
    *Dep't of Child. & Fam. Servs.*,
    974 F.3d 1012 (9th Cir. 2020) ............................................................. 52

*Savage v. Glendale Union High Sch. Dist. No 205, Maricopa*
    *County*,
    343 F.3d 1036 (9th Cir. 2003) ............................................................. 32

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974) ............................................................................. 33

*Shanks v. Dressel*,
    540 F.3d 1082 (9th Cir. 2008) ..................................................... 65, 66, 68

*St. Clair v. City of Chico*,
    880 F.2d 199 (9th Cir. 1989) ............................................................... 33

*Telesaurus VPC, LLC v. Power*,
    623 F.3d 998 (9th Cir. 2010) ............................................................... 32

*Texas v. United States*,
    523 U.S. 296 (1998) ............................................................................... 4

*Thornton v. City of St. Helens*,
    425 F.3d 1158 (9th Cir. 2005) ............................................................. 54

*Tull v. United States,*
     481 U.S. 412 (1987) ................................................................. 81

*United States v. Amalfi,*
     47 F.4th 114 (2d Cir. 2022) ............................................... 68, 69

*United States v. Antoine,*
     906 F.2d 1379 (9th Cir. 1990) ........................................... 59, 61

*United States v. Arnett,*
     628 F.2d 1162 (9th Cir. 1979) ................................................ 82

*United States v. Bajakajian,*
     524 U.S. 321 (1998) ........................................................... 76, 77

*United States v. Black,*
     482 F.3d 1035 (9th Cir. 2007) ................................................ 38

*United States v. Dunkel,*
     927 F.2d 955 (7th Cir. 1991) .................................................. 35

*United States v. One Parcel of Real Property, With Buildings,*
     *Appurtenances, Improvements, and Contents, Known as:*
     *2121 East 30th Street, Tulsa, Oklahoma,*
     73 F.3d 1057 (10th Cir. 1996) ................................................ 34

*United States v. Palma,*
     7 Fed. Appx. 748 (9th Cir. 2001) ........................................... 61

*United States v. Ritchie,*
     342 F.3d 903 (9th Cir. 2003) .................................................. 36

*Walnut Hill Estate Enters. v. City of Oroville,*
     No. 2:09-cv-00500-GEB-GGH, 2010 WL 2902346 (E.D.
     Cal. July 21, 2010) ................................................................. 62

**State Cases**

*Breneric Assocs. v. City of Del Mar,*
    69 Cal. App. 4th 166 (1998) ............................................................. 53, 54

*City and County of SF v. Sainez,*
    77 Cal. App. 4th 1302 (2000) ......................................................... 50, 79

*City of Bakersfield v. Miller,*
    64 Cal.2d 93 (1966) ................................................................................. 77

*Clark v. City of Hermosa Beach,*
    48 Cal. App. 4th 1152 (1996) ................................................................. 54

*County of Humboldt v. Appellate Division of Superior Court,*
    46 Cal. App. 5th 298 (2020) .......................................................... 50, 82

*Erlach v. Sierra Asset Servicing LLC,*
    226 Cal. App. 4th 1281 (2014) ............................................................... 79

*Golden Gate Water Ski Club v. County of Contra Costa,*
    165 Cal. App. 4th 249 (2008) ................................................................. 77

*Lent v. California Coastal Com.,*
    62 Cal.App.5th 812 (2021) ...................................................................... 79

*Maral v. City of Live Oak,*
    221 Cal. App. 4th 975 (2013) .......................................................... 65, 80

*Martin v. Riverside County Dept. of Code Enforcement,*
    166 Cal. App. 4th 1406 (2008) ............................................................... 62

*McHugh v. Santa Monica Rent Control Bd.,*
    49 Cal.3d 348 (1989) ............................................................................... 82

*People v. Braum,*
    49 Cal. App. 5th 342 (2020) .......................................................... 78, 79

*Rose v. City of Coalinga,*
 190 Cal. App. 3d 1627 (1987) .............................................................. 77

*Sweeney v. Cal. Regional Water Quality Control Bd.,*
 61 Cal. App. 5th 1093 (2021) .............................................................. 70

**Federal Statutes**

28 U.S.C. § 636(c) ........................................................................................ 83

**State Statutes**

California Code of Civil Procedure § 335.1 ............................................ 40

California Government Code § 53069.4 ............................... 15, 17, 58, 82

California Government Code, § 53069.4, subd.(a)(1) .......................... 59

California Government Code, § 65000 et seq. ....................................... 52

**Rules**

Federal Rule of Evidence, Rule 201 ........................................................ 34

Federal Rule of Evidence, Rule 201(b) ................................................... 39

Federal Rules of Civil Procedure, Rule 8 ............................................... 33

Federal Rules of Civil Procedure, Rule 12(b)(6) .................................. 33

Federal Rules of Civil Procedure, Rule 72 ............................................. 34

**Constitutional Provisions**

California Constitution, Article XI, § 7 ............................................ 52, 65

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs assemble what amounts to a law school exam, raising a plethora of claims, each assailing routine enforcement of local land use laws as applied to commercial cannabis activities illegal under federal law. Their claims were properly rejected below.

Plaintiffs' objection to judicial notice and the incorporation doctrine on a motion to dismiss were neither properly preserved below nor adequately briefed here. The Court may treat it as forfeited. Even on its merits, the 69-page order of dismissal properly treated the facts.

The claims are both time-barred by the two-year statute applicable to section 1983 claims in California and unripe, as Plaintiffs have suffered no deprivation and have either resolved their code enforcement cases or those cases remain pending.

The due process claims fail because there can be no protected property interest in federally illegal activity or in unapproved permits or pending code violation cases. No egregious conduct appears and the County's zoning standards have rational basis.

Administrative fines are not unconstitutional exactions. Nor is there any jury right in administrative hearings.

Finally, no remand is necessary here but, if one were, Plaintiffs do not meet the very high standard for remand to a new jurist.

13

For any or all these reasons, this ambitious, but baseless, attack on routine enforcement of local land use laws must fail. Accordingly, the County of Humboldt respectfully asks this Court to affirm.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This section 1983 case against Humboldt County, its Board of Supervisors, and its Planning and Building Department (together, "County") asserts procedural and substantive due process claims; unconstitutional exactions; excessive fines; and denial of a jury right in administrative proceedings. Plaintiffs ("Challengers") dispute Humboldt County's efforts to remedy violations of building, land use, and cannabis abatement laws.

### A.   Humboldt's Cannabis Regulations

The County's Code details a process to enforce local building and zoning laws. Its "Administrative Civil Penalties" chapter states these goals:

- to protect the health, safety, and welfare of County residents;

- to provide "objective criteria for the imposition of penalties and provide for a process to appeal the[ir] imposition";

- to provide means to punish violators; and

- to minimize the expense and delay required for judicial enforcement. 3-ER-578 (Humboldt County Code ("HCC") § 352-2).

Enforcement begins with a "Notice of Violation and Proposed Administrative Civil Penalty" and a "Notice to Abate" allowing a 10-day time period to cure the violation. 3-ER-584 (HCC § 352-7); 2-ER-69-70 (HCC § 351-7, 8). Such notices state the "name and last known address of each responsible party." 3-ER-584 (HCC § 352-8(a)). They inform recipients of Chapter 2's procedures, including opportunity to appeal a finding of violation and/or a proposed penalty. 3-ER-585-6 (HCC §§ 352-8(g), 352-9).

The County notifies each responsible party that an appeal will be heard by a hearing officer appointed by the Board of Supervisors. 3-ER-585-6 (HCC § 352-8(j) and 352-9). Notices also state a penalty is not final until 20 days after service of decision on any appeal, if judicial review is not timely sought pursuant to California Government Code section 53069.4. 3-ER-586 (HCC § 352-8(l)(ii)); 3-ER-589 (HCC § 352-12). If judicial review is sought, a fine is final 10 days after the court's decision is final. 3-ER-586 (HCC § 352-8(l)(iii)); 3-ER-589 (HCC § 352-13). A notice also states a final penalty may

become a lien on property affected by a violation. 3-ER-586 (HCC § 352-8(m)); 3-ER-592 (HCC § 352-16(l)).

Finally, a notice states the County may serve a further notice of violation for a new violation or an existing violation allowed to continue for 90 days after a penalty is imposed. 3-ER-586 (HCC § 352-8(n)); 3-ER-582 (HCC § 352-5(d)). Penalties for illicit cannabis cultivation — a widespread problem in Humboldt and neighboring counties in California's so-called "Emerald Triangle,"[1] — commence upon service of a notice of violation, but are also subject to judicial review. 3-ER-580 (HCC § 352-3(m)); 3-ER-582 (HCC § 352-5(b)(2)); 3-ER-589 (HCC § 352-13).

A violation may incur up to $10,000 per day through the 90th day it continues. 3-ER-582 (HCC § 352-5(a)). Penalty amounts turn on the severity of a violation's impact, the number of complaints received, the willfulness or negligence of a responsible party, whether she acted reasonably to prevent a violation, had actual or constructive knowledge of its impacts, her degree of sophistication, prior violations, County staff time incurred, and her efforts to remediate its impacts. 3-ER-583 (HCC § 352-6(b)). Fine "Categories 1

---

[1] Context for this term appears at < https://en.wikipedia.org/wiki/Emerald_Triangle > (as of Nov. 17, 2023).

through 4" reflect degrees of culpability and severity. 3-ER-583 (HCC § 352-6). A hearing officer may find no violation exists and may suspend or reduce a fine, applying these criteria or upon finding a responsible party promptly remedied a violation. 3-ER-588-9 (HCC § 352-12(a), (b)). As is apparent, the overarching objective is compliance with local law, not punishment.

A hearing officer's decision is subject to judicial review under California Government Code section 53069.4. 3-ER-589 (HCC § 352-13). Instructions for seeking such review accompany a hearing officer's ruling. 3-ER-589 (HCC § 352-12(c)). "[J]urisdiction to collect the final administrative civil penalty" follows if a notice of violation withstands review by a hearing officer and judicial review. 3-ER-590 (HCC § 352-14(a)). County staff cannot collect penalties without affording opportunities for such review. *Id*. The Planning Director can reduce or waive administrative costs, fees, and penalties or make a "compliance agreement" to induce voluntary compliance. 3-ER-590 (HCC § 352-14(c)).

Challengers argue these procedures are unconstitutional because fines may be high, delays may occur, the County appoints the hearing officer and charges appeal fees (akin to court filing fees), and the County does not grant new land use entitlements to those who persist in Code violations. (E.g., 4-ER-692–694, 704–706, 708–710, 711–713, 737 [Compl. ¶¶ 38–51, 149–168, 183–209, 213–223 and 227–

232]). All but the last can be said of any system of adjudication; none sustains a claim.

### B.  The Thomases Resolve their Violations

In mid-2021, satellite imagery and a realtors' listing revealed a metal building with a reflective roof used to grow cannabis at a home in Miranda, an unincorporated community on the South Fork of the Eel River in Humboldt County (274 Lower Cathey Ln., APN 211-391-011-000). 1-ER-8:21–22; 2-ER-123–128 (Exh. A); 4-ER-716–717 at ¶¶ 269–276. Realtor's photographs showed multiple building vents and cloning trays to produce cannabis nursery stock. 1-ER-9:1–3; 2-ER-123–128. The Thomases bought the site from Sommerville Creek, LLC in August 2021. 4-ER-716 at ¶¶ 264, 268.



2-ER-124.

The County served notices of violation and to abate in August 2021 citing:

- an "unpermitted commercial cannabis operation with approximately 2,500 square feet of cultivation" and

- a "structure facilitating commercial cannabis activity and constructed contrary to the provisions of the Humboldt County Code."

2-ER-134–220 (Exhs. C–F). In addition to the information required by the County Code, the notice stated possible penalties and informed the property owners how to remedy the violations. 2-ER-134–150.

These are category four violations, with a proposed penalty of $6,000 each. 2-ER-138. The notices named Sommerville Creek as the "responsible party," allowing 10 days to correct the violations or to be subject to a daily administrative penalty under HCC section 352-5 of up to $12,000 for up to 90 days. 2-ER-135.

Abatement required responsible parties to:

(i) cease cannabis cultivation and remove all cannabis and related infrastructure, including that for power and irrigation; and

(ii) remove all cannabis cultivation structures constructed unlawfully including obtaining any necessary demolition permit.

2-ER-134–150. Inspector Brian Bowes signed the notices and posted them on the property. *Id*.

With the Thomases' consent and their attorney present, the County inspected the site in September, confirming the greenhouse had been used to grow cannabis. 2-ER-221–228 (Exhs. G, H). Although the Thomases did not wish to demolish it, the County inspector explained the County's then-policy requiring its removal. 2-ER-242–248 (Exh. K); 4-ER-718–719 at ¶¶ 287–289. Although the County never designated the Thomases as responsible parties, they

appealed. 2-ER-229 (Exh. I). But they did nothing to abate the nuisances for a year.

In November 2021, the County and the Thomases reached a Compliance Agreement requiring them to demolish the greenhouse. The Thomases agreed to do so within six months. 2-ER-234 at ¶ 2.A. The County agreed to stay enforcement, collection actions, and service of notices of violation and to forbear from naming the Thomases. 2-ER-235 at ¶ 3.A. Upon the Thomases' performance, the County would dismiss the case. 2-ER-235 at ¶ 3.B. If not, the County could serve new notices naming the Thomases. *Id.*, ¶ 2.E. While the Thomases applied for a demolition permit, they never picked it up, and have yet to demolish the illicit greenhouse.

In March 2022, with the Compliance Agreement in effect, the County advised the Thomases of a new policy (DPS-22-04) offering property owners a path to permit rather than demolish illicit cannabis structures by providing a restoration plan for their non-cannabis use. 2-ER-242 (Exh. K). In April 2022, the Thomases' attorney notified the County of their desire to pursue this path. 3-ER-571 (Exh. MM). The policy allows property owners a year to seek necessary permits. While the Thomases claim they have been told permits will not issue while enforcement proceedings are pending, they do not allege they applied for a permit much less that the County denied it. In any event, they have yet to apply for a permit to

retain the greenhouse, although they submitted a restoration plan. The County has neither named the Thomases in a notice of violation nor fined them. (See generally 4-ER-688-756, which does not allege the Thomases were fined or named in notice.)

### C. Graham Resolves His Violations

On May 10, 2018, the CEU served notices on Jesica Modic and Blu Graham for three cannabis violations on their property at 2899 Chemise Mountain Road, Shelter Cove, an unincorporated community in the remote and rugged "Lost Coast"[2] region of Humboldt County (APN 108-281-002-000) for:

- unpermitted grading under HCC § 331-14, including significant clearing exposing bare earth (risking erosion) and creating an unpermitted 2,500-square-foot pond;

- construction in violation of building, plumbing and/or electrical codes (HCC § 331-28), specifically four unpermitted structures the County found consistent with greenhouses or "hoop houses" commonly used to grow cannabis;[3] and

---

[2] < https://en.wikipedia.org/wiki/Lost_Coast> (as of Nov. 18, 2023).

[3] A photo of a hoop house appears on page 24 *infra*.

- violation of the County's commercial cannabis ordinance, HCC § 314-55.4.

2-ER-249–73 (Exhs. L, M & N).

Because the County is large, sparsely populated, and poorly served by roads, and roundtrip travel from the County seat can take much of a day,[4] the County established the violations using satellite data, as well as its Planning and Building Department's and other agencies' records. 2-ER-274–276 (Exh. O). The County chose this area for satellite analysis given the prevalence of cannabis cultivation there, as evidenced by County cannabis cultivation registrations and earlier, illicit commercial cultivation there. *Id*. The notices cited a daily administrative penalty of $10,000 for up to 90 calendar days for the violations. 2-ER-249–254 (Exh. L). The notices detailed appeal and hearing rights.

---

[4] Apple Maps estimates drivetime to the Graham site from the County seat of 1 hour, 53 minutes. The County encompasses 4,052 square miles, but fewer than 135,000 people — a population density comparable to that of Kansas or Nevada. <https://en.wikipedia.org/wiki/Humboldt_County,_California#Demographics > (as of Nov. 17, 2023). This makes it larger than Delaware and Rhode Island and about three-quarters the area of Connecticut. <https://en.wikipedia.org/wiki/List_of_U.S._states_and_territories_by_area> (as of Nov. 17, 2023).

The County sought abatement, including a permitted site restoration plan, ending cannabis cultivation, and removing cultivation infrastructure. 2-ER-255–260 (Exh. M).



2-ER-302.

Graham abated two violations by showing no current cultivation and removing the unpermitted hoophouses. 2-ER-274–276. In 2018, Graham and his attorney contacted the County about obtaining permits for the grading and greenhouses, but Challengers do not allege he applied for permits or that the County has denied them. 4-ER-724–5 at ¶¶ 359–365.

In 2021, the County offered a compliance agreement proposing to waive penalties for remedial grading and filling the pond; Graham did not agree. 2-ER-277–288 (Exh. P [unsigned agreement].) Instead, he appealed. 2-ER-291–310 (Exh. R). In July 2022, he requested information on impacts of his code violations on a Safe Home application, saying he wished to retain the pond for firefighting. *Id.* The Safe Home program allows property owners to retain unpermitted residential structures without penalty by complying with local laws. 3-ER-598–629 (Exh. OO.) He provided an engineer's regrading proposal. 2-ER-289–290 (Exh. Q). The County advised he needed pond and grading permits and placed his Safe Home application on hold pending compliance. 2-ER-291–310 (Exh. R); 4-ER-725 at ¶ 365; 4-ER-727 at ¶ 378.

In September 2022, the County mailed and posted a notice of appeal hearing. 2-ER-311–327 (Exh. S). This notice reduced potential daily penalties to $1,000 as Graham had abated two violations, including the category four cannabis violation. 2-ER-274–276 (Exh. O); 2-ER-328–344 (Exh. T). Graham's attorney suggested these terms in a voicemail message responding to the County's proposed compliance agreement.

Later that month, Graham visited the Planning and Building Department (without counsel), seeking to resolve the remaining violation. Graham agreed to apply for a grading permit for the pond,

and to pay administrative costs. 2-ER-345–351 (Exh. U). The County issued his grading permit that day, billing him $3,474.10 in costs. 2-ER-345–351; 3-ER-353–361 (Exh. V). The Planning Director confirmed these terms by email, and Graham accepting them a few hours later. 2-ER-345–351. Accordingly, the County cancelled the appeal hearing, refunded $2,951.18 in hearing costs, and asked Graham to pay just $523 for permit applications. 3-ER-353–361. The County issued a grading permit on October 3, 2022. 3-ER-362 (Exh. W). This violation is resolved.

### D. Efforts Continue to Resolve Olson's Violations

In April 2018, the County issued a notice of violation to Paul Zaccardo for unpermitted cannabis cultivation and unpermitted structures on APN 529-171-033 (1133 Red Cap Road) in Orleans, an unincorporated community on the Klamath River. 3-ER-387–400 (Exh. Z). In August 2020, Sheriff's deputies executed search warrants on 1133 Red Cap Road and two adjacent parcels, 1221 and 1087 Red Cap Road (APNs 529-171-034-000 and 529-171-040-000). 3-ER-401–410 (Exh. AA). The three parcels were found to be one cannabis cultivation operation. 3-ER-403. Plaintiff Olson purchased 1133 Red Cap Road and two other nearby properties in September 2020 — all with active code enforcement cases. 4-ER-730, 732 at ¶¶ 410, 413, 432.

These are 1030 (APN 529-181-036) and 1030A (APN 529-181-038) Red Cap Road. 3-ER-630–638 (Exhs. PP, QQ).

That same month, the County issued a notice of violation to "Lb 4 Lb Corporation" as to 1030 Red Cap Road and to Paul Zaccardo as to 1133 Red Cap Road. 3-ER-411–423 (Exhs. BB, CC). Two parcels required a grading assessment and plan to correct an unpermitted tunnel under an industrial building. Additionally, the County cited unpermitted cannabis cultivation and greenhouses, waste and a junk vehicle, and unpermitted grading. *Id*. It issued no notice at that time naming Olson.



3-ER-410.



Photo #18 APN 529-181-036 Looking East into Tunnel Opening

3-ER-543.

Soon thereafter, Olson asked the County about the violations, learning corrective actions were needed on all parcels. 3-ER-424–429 (Exh. DD). The County allowed her time to abate before serving a notice on her. *Id.* Days later, Olson's consultant submitted an Initial Plan for Restoration, seeking more time to comply. 3-ER-430–438 (Exh. EE). Months later — in March 2021 — her new consultant again discussed remedial grading with the County, but Olson has taken no further abatement action to date. 3-ER-424–429.

A year later, the County served new notices naming Olson. 3-ER-439–446; 3-ER-552–558 (Exhs. FF & JJ). The NOV cites four violations at 1133 Red Cap Road, proposing daily fines of $11,000 for

up to 90 days after a 10-day abatement period. 3-ER-439–446. Only this NOV names Olson. 3-ER-411–423; 3-ER-439–446. She timely appealed. 3-ER-447 (Exh. GG).

A month later, yet a third consultant submitted a remediation plan. 3-ER-450 (Exh. HH). The County approved it for 1030A Red Cap Road, but required removal of a cannabis structure and infrastructure and solid waste and filling 45 holes at 1133 Red Cap Road, and permits for a 10,000 square-foot graded area and for an cannabis accessory building, as well as removing cultivation refuse and infrastructure from 1030 Red Cap Road. 3-ER-549 (Exh. II). Olson agreed to comply, but the case remains open. The County remains hopeful of resolution.

### E.    Glad's Violations Continue

In September 2018, Cyro Glad bought 755 Road H, New Harris, California in the remote southeast corner of Humboldt County, a 40-acre parcel (APN 218-041-006-000). 4-ER-735 at ¶¶ 465 & 463; 3-ER-639 (Exh. RR). The County used satellite images to identify Code violations there. 3-ER-643 (Exh. SS).



3-ER-650

On November 2, 2018, it served Glad notices, by first-class, certified mail at P.O. Box 1801, Redway, CA 95560. 4-ER-653–659 (Exh. TT). The notices cite four violations:

- unpermitted grading (HCC § 331-14);

- construction in violation of building, plumbing and/or electrical codes (HCC § 331-28);

- violation of the commercial cannabis ordinance (HCC § 314-55.4); and

- development within a streamside management area (HCC § 314-61.1).

4-ER-656; 3-ER-364–384; 2-ER-153–220, 4-ER-660–677 (Exhs. TT, X, F, & UU); 4-ER-735 at ¶ 469.

The notice proposed a daily penalty of $10,000 for up to 90 days, after a 10-day abatement period. 4-ER-683, 4-ER-654, 4-ER-736 at ¶ 470. Another notice and penalty could follow if the violation remained after 90 days. 4-ER-653–659; 3-ER-586 (HCC § 352-8(n); 3-ER-582 (HCC § 352-5(d)). If Glad needed more than 10 days to remedy the violations, the County offered a compliance agreement. 4-ER-653–659. The notices detailed Glad's appeal rights, as the County Code requires. *Id.*; 4-ER-678; 736 at ¶ 475–476; 3-ER-585–586 (HCC §§ 352-8(g), 352-9).

Glad made two hearing requests in November 2018, admitting "all nuisance[s] are in the process of being removed, cleaned, and [brought up] to County Code standards." 4-ER-678 (Exh. VV), 4-ER-735 at ¶¶ 468, 475–76. These requests listed the address to which the County had sent the notices. 4-ER-653–659, 4-ER-678–681 (Exhs. TT & VV). Glad alleges he sent a February 2019 letter to the Planning Director and "never received a response." 4-ER-736 at ¶¶ 478–479. However, due to delays arising from COVID and a large caseload, the County sent him a May 2021 letter asking whether he wanted to maintain his hearing request or enter into a compliance agreement. 4-ER-682 (Exh. WW). Glad's inaction caused subsequent delay.

## II.   STANDARDS OF REVIEW

This Court reviews dismissal for failure to state a claim de novo, and denial of leave to amend for abuse of discretion. *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631 (9th Cir. 2012); *Telesaurus VPC, LLC v. Power*, 623 F.3d 998 (9th Cir. 2010). Judicial notice and incorporation by reference are reviewed for abuse of discretion. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

On a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the initial burden. *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009). One may attack jurisdiction facially or factually. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A facial attack "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Courts must accept facial allegations as true on a motion to dismiss. *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1189 (9th Cir. 2001). But, a factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. A court need not presume the truthfulness of such allegations; it may review evidence beyond the complaint. *Id.*; *Savage v. Glendale Union High Sch. Dist. No 205, Maricopa County*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). One opposing a factual challenge to jurisdiction must present "affidavits or other evidence necessary to satisfy its burden of

establishing subject matter jurisdiction." *Safe Air*, 373 F.3d at 1039; *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

On a Rule 12(b)(6) motion, the trial court must determine whether the plaintiff may offer evidence of its claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Dismissal is proper if an operative complaint fails to advance "a cognizable legal theory" or to allege "sufficient facts alleged under a cognizable legal theory." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016). The *Twombly* / *Iqbal* standard requires facts alleged to state a "facially plausible" claim. Rule 8 mandates a complaint state sufficient facts with facial plausibility and allows the trial court to draw reasonable inferences from those facts. *Iqbal*, 556 U.S. at 675.

The 69-page order on review applies these standards faithfully.

## III.   THE ORDER'S EVIDENTIARY BASIS WAS PROPER

The trial court did not abuse its discretion by noticing public records, as to which Challengers conceded authenticity and raised no specific objections — below or here. These are ordinances, County documents, code enforcement records, and court documents. 1-ER-25; 2-ER-106. All were properly considered:

- The incorporation by reference doctrine applied to most, as the Complaint discusses them. 1-ER-25.

- These documents could be judicially noticed as facts not subject to reasonable dispute, or accurately determined from sources the accuracy of which cannot reasonably be questioned. 1-ER-25; 2-ER-112; 2-ER-56.

Moreover, Challengers did not preserve this issue below nor adequately brief it here, forfeiting it. Should this Court reach its merits, it fails substantively, too.

## A.    Challengers Did Not Preserve the Issue

Challengers' one-sentence, general objection to the County's Request for Judicial Notice fails to preserve this issue. Brief of Appellants ("Blue") at 21; 2-ER-111; 2-ER-112; 2-ER-56. The objection merely suggests the request for notice as a whole sought to introduce facts not judicially noticeable, converting the motion to dismiss to one for summary judgment — citing only Federal Rule of Evidence 201, and ignoring authority cited by the County and adopted by the trial court supporting notice. 2-ER-110. It offered no discussion of specific documents and cited any other authority. 2-ER-111.

Such general objections do not preserve issues for appeal. Fed. Rules Civ. Proc., Rule 72 (requiring specific written objections); *United States v. One Parcel of Real Property, With Buildings, Appurtenances, Improvements, and Contents, Known as: 2121 East 30th*

*Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060–61 (10th Cir. 1996) (general objection forfeits issue).

Challengers failed to specify below which documents or facts they disputed. 2-ER-111; 1-ER-5 n.1, n.3. They repeat that error on appeal, identifying in their Opening Brief no factual dispute as to any noticed document, burdening this Court to do so. Blue at 21–22. But, "[j]udges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). While the trial court had to fill in Challengers' poorly (or tactically) pleaded Complaint by resort to incorporation or judicial notice, this Court need not. It may treat the point as forfeited.

## B. Claims the Trial Court Did Not "Clearly" Specify Noticed Facts Ignores the Lengthy Order

Citing *Khoja*, Challengers claim the trial court failed to identify the facts it "thought contradicted Plaintiffs' allegations." Blue at 21. But it did, repeatedly. The order on review devotes 16 pages detailing facts from the Complaint and from documents properly incorporated and judicially noticed. 1-ER-5–20. It notes gaps, inconsistencies, and misstatements in the Complaint in light of the documents incorporated or noticed. *E.g.*, 1-ER-40. For example, it states:

> Plaintiffs' assertions that these investigations
>
> were inadequate, or without regard for

> probable cause, or based on old satellite
>
> images … are conclusory and contradicted by
>
> the record as set forth herein, as is the case
>
> with the majority of Plaintiffs' assertions
>
> offered in support of this claim.

1-ER-40:17–20; *see also* 1-ER-43. Over 34 more pages, the order identifies the facts evidenced by the documents it incorporates or notices, explaining how they make implausible the Complaint's claims. 1-ER-20–53. Challengers know the basis of the order on review; they just disagree with it.

*Khoja* requires no more. This trial court used a scalpel to carve a precise path through the records in issue where others might use a butter knife. But such precision is not error.

## C. Incorporation by Reference Was Proper

Incorporation by reference allows documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" to be treated as part of it. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002). On a 12(b)(6) motion, a court may assume the truth of incorporated documents. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

As the trial court found, most of the documents to which Challengers object generally could be incorporated by reference as they "have been discussed throughout the allegations in the FAC; moreover, while [Challengers] have lodged a *pro forma* objection, they have not questioned their accuracy or their authenticity." 1-ER-25:18–20. Challengers placed these records in issue, alleging they establish their claims. The trial found incorporation necessary to analyze Challengers' conclusory allegations, many contradicted by the very records they discuss. 1-ER-25; 1-ER-40:17–20.

This is proper on a motion to dismiss. *E.g.*, *Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) (incorporating entirety of website on motion to dismiss defamation claim). As the Ninth Circuit holds, "once a document is deemed incorporated by reference, the entire document is assumed to be true for purposes of a motion to dismiss." *In re NVIDIA Corp. Securities Litigation*, 768 F.3d 1046, 1058 n.10 (9th Cir. 2014) (cleaned up).

### D.    Judicial Notice Was Not An Abuse of Discretion

The trial court also properly noticed public records, the authenticity of which Challengers never questioned. 1-ER-26; 2-ER-112; *Colony Cove Prop., LLC v. City of Carson*, 640 F.3d 948, 954–56, nn.3–4 (9th Cir. 2014). These were:

- County ordinances (RJN Exhs. E, F, X, Y, NN, UU) and policy statements (Exhs. K, OO), relevant to show applicable local law;

- Code enforcement records, including notices of violation (RJN Exhs. C, D, L, M, N, S, Z, BB, CC, FF , JJ, TT); appeal requests (Exhs. I, GG, VV); settlement documents (Exhs. J, O, P, V, W, WW); and deeds (Exhs. B, PP, QQ, RR) — all relevant to the procedures challenged here;

- Photographs of the subject properties (Exhs. B, SS);

- Correspondence between Challengers and the County (Exhs. Q, EE, HH);

- Law enforcement records, including inspection consents and search warrants the Complaint addresses (Exhs. G, H, AA); and

- Court records (Exh. LL).

All may be noticed as public records not subject to reasonable dispute. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994); *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007). The trial court cited none as to disputed facts — authenticity is conceded. *Khoja*, 899 F.3d at 998; 2-ER-110.

Such notice did not make this a summary judgment motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). A court may notice an adjudicative fact "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id*., subds. (1)–(2). A court may notice "undisputed matters of public record," including "documents on file in federal or state courts," as well as "documents not attached to a complaint … if no party questions their authenticity and the complaint relies on those documents." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) The order on review here explains as to the County's request and supplemental requests for notice:

> Because Plaintiffs do not offer any factual
> dispute about any of the contents of
> Defendants RFJN cited herein (as well as
> Defendants' SRFJN)— namely, the records
> and reports of administrative agencies, as well
> as the local laws, ordinances and regulations,
> law enforcement records, a court decision,
> and the other official county records and
> documents — judicial notice is proper.

1-ER-26. The trial court appropriately overruled Challengers'
"unspecific and unsupported objection," noticing Exhibits A through
XX to fill gaps in the poorly (or tactically) pleaded Complaint.

## IV.   THE CLAIMS FAIL PROCEDURALLY

### A.   The Claims Are Untimely

These claims are time-barred because Challengers knew, or had
reason to know, of their injuries two years before they sued. Section
1983 claims are subject to a two-year statute borrowed from
California Code of Civil Procedure § 335.1's rule for personal-injury
claims. *Action Apt. Ass'n, Inc. v. Santa Monica Rent Ctrl. Bd.*, 509 F.3d
1020, 1026 (9th Cir. 2007). The trial court so found. 1-ER-31.

### 1.   Facial challenge to the cannabis regulations is time-barred

The trial court correctly found any challenge to the County's
2017 cannabis regulations were time-barred when Challengers sued
in 2022. 1-ER-33; 2-ER-60 (Ordinance 2576); 4-ER-694–696, 755
(Amended Complaint ("AC") ¶¶ 56–69, 605–609). Challengers allege
the ordinance increased penalties for cannabis violations and
lessened time to cure them. 4-ER-695 (AC ¶¶ 60–69). But, the
ordinance took effect 30 days after its June 27, 2017 adoption. 2-ER-60
at § 8. This lawsuit came over four years later — too late. 4-ER-769.

### 2. As-applied claims came more than two years after Challengers knew of them

The trial court found similarly untimely Challengers' as-applied challenges to notices of violation issued more than two years before they sued. 1-ER-31–32. Plaintiffs challenge application of County code enforcement policies and practices. 4-ER-755 (AC ¶¶ 610–614). Such challenges accrue when a plaintiff knows, or has reason to know, of the threatened harm. *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002). An as-applied claim as to law enforcement accrues when a decision is made to take formal action — or, when plaintiff learns of such a decision. Indeed, *RK Ventures* concludes the limitations period commenced when a city sent a formal notice of abatement, and plaintiffs had notice of the commencement of an administrative hearing. *Id*. Applied here, Challengers claims arose no later than when they knew of the notices of violation and to abate.

All Challengers — except the Thomases, never named as responsible parties — knew of the County's decisions to take formal action as to their properties more than two years before suit. Notices as to the Glad, Olson, and Graham properties issued, and were received, more than two years before Challengers' October 2022 suit:

- Graham's notice was issued and received May 10, 2018. 2-ER-250–273; 4-ER-722 at ¶¶ 333–335.

41

- The Olson notices were issued September 11, 2020 (days after she bought the property), and received October 1, 2020. 3-ER-388–400, 412–423; 4-ER-730 at ¶ 420.

- Glad's NOV was issued on November 2, 2018, and he learned of it November 16, 2018 (4-ER-654–659; 4-ER-735–736 at ¶¶ 468–470).

Because Glad, Olson, and Graham actually knew of the code enforcement proceedings outside the statutory period, their claims are time-barred.

### 3. The continuing harm theory does not apply

Challengers justify their late claims, arguing their claims continue while enforcement does. Not so. A claim accrues when a plaintiff has actual or constructive knowledge of a decision to prosecute. *RK Ventures*, 307 F.3d at 1058. Continued prosecution is an inevitable effect of the decision to prosecute. *Id.* Were it a continuing harm, no claim would ever run as to law enforcement until all proceedings reached a final, nonappealable judgment. Given the availability of habeas relief, that can be a very long time indeed. This is not the law.

Moreover, "little remains of the continuing violations doctrine." *Bird v. Dept. of Human Servs.*, 935 F.3d 738, 748 (9th Cir. 2019). *Bird*

held the continuing violations doctrine did not apply to "continuing effects" of an action. *Id.* The plaintiff there learned about being placed on a list of adults suspected of child abuse beyond the statutory period, but was denied certain rights and privileges within the period due to the listing. *Id.* at 739. The Ninth Circuit distinguished repeated deprivations — subject to the continuing violations doctrine — from continuing effects of earlier actions — which are not. *Id.* at 748. Neither does an administrative hearing continuing into the limitations period create a continuing violation for a prosecution commenced earlier. *RK Ventures*, 307 F.3d at 1058.

*Flynt v. Shevin*, 940 F.3d 457 (9th Cir. 2019), does not aid Challengers. Blue at 17. *Flynt* does not change *Bird*'s analysis. Both proclaim challenged acts must be repeated during the statutory period to trigger the doctrine. *Id.* at 463; *Bird*, 935 F.3d at 748–49. Moreover, *Flynt*'s facts are inapposite. There, licensees challenged a cross-licensing prohibition on regulated card rooms (offering poker and other gambling), claiming damages for each missed opportunity to invest in card rooms outside California. Each missed opportunity was a "new injury" enabled by the challenged statute. *Id.* at 463. Challengers here do not claim County's cannabis regulations deterred them from acquiring other properties nor allege new deprivations in the statutory period as to the properties they own. Rather, they challenge code enforcement proceedings commenced

before the two-year statutory period, based on an ordinance enacted even earlier. These are not repeated violations like the lost investment opportunities in *Flynt*, but the continuing effects of prosecution commenced earlier. "A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." *Flynt*, 940 F.3d at 463 (cleaned up).

Continuing effects of time-barred violations are not actionable. Challengers' as-applied challenges accrued when they first received notices of violation and to abate or otherwise learned of the County's prosecution effort. That fact makes untimely all the claims here.

### B. Challengers' Claims Are Unripe; They Lack Standing

Challengers' claims relating to permits and penalties are unripe. Ripeness to challenge government action requires a final determination: "In the area of land use, the doctrine of ripeness is intended to avoid premature adjudication or review of administrative action." *Herrington v. County of Sonoma*, 857 F.2d 567, 568–69 (9th Cir. 1988) (cleaned up). This requires a final government decision inflicting concrete harm on the claimant. *Id.* Standing turns on the same question — did the plaintiff suffer a concrete, particularized, actual harm? *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The trial court correctly found neither ripeness nor standing here:

- No Challenger in fact applied for and obtained a final decision on land use permit applications, denial of which they complain. 1-ER-31.

- No fines have been imposed or paid, making speculative a claim that excessive fines are in issue. 1-ER-26.

These procedural bars preclude claims as to an alleged blanket denial of land use permits (Claims 1, 2, and 3) and excessive fines (Claim 5).

## I.    The County made no final determination

Challengers contend they can test an alleged policy to deny permits to those with open abatement cases, but none has applied for such permits. The Opening Brief does not grapple with the fundamental requirement of Article III that those who invoke federal remedies must show concrete harm.

Challengers allege the County told them it would not issue them permits while enforcement proceedings were pending. 4-ER-689 at ¶ 9; 4-ER-693 at ¶ 44; 4-ER-711 at ¶¶ 214–217; 4-ER-712 at ¶ 220; 4-ER-728 at ¶ 395. But, they concede none of them applied for a permit without success. 1-ER-32. As the trial court concluded, these "allegations of harm that is yet to be experienced (i.e., by complaining of permit denials without actually applying for one) are unripe." 1-ER-32:18–19. Even if Challengers can prove the County

45

told them permits would be denied, they can show no final determination. 1-ER-32:24–28; 1-ER-33:1–4. These claims allege "speculative, rather than concrete, harm." 1-ER-33:4.

Many cases hold Challengers must apply for permits and obtain a final decision before they can have standing or show ripeness. To cite but three:

- *Guatay Christian Fellowship v. County of San Diego*, 670 F.3d 957, 983 (9th Cir. 2011) (church which failed to complete application process for use permit lacked standing to challenge prohibition of church use on its land);

- *Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1454 (9th Cir. 1987) (no ripeness absent rejected permit application);

- *Hoehne v. County of San Benito*, 870 F.2d 529, 532 (9th Cir. 1989) (collecting substantive due process and equal protection cases).

Indeed, the Complaint's allegations establish the point. The County placed a "hold" on a permit for Graham "while he was trying to participate" in the Safe Home program. Blue at 23; 4-ER-727 at ¶ 378. It was unclear whether the County would permit his existing unpermitted structures under that program. 4-ER-725 at ¶ 365. The County told him it may still do so. *Id.* Thus, the County never denied

46

Graham anything. So, too, for Olson, who emailed that she wanted a septic permit and was told that none would be issued, but does not claim to have applied for one. Blue at 23; 4-ER-733 at ¶¶ 441–442.

As the County has yet to act on such permits, permits may yet issue, mooting the claims. *Guatay Christian*, 670 F.3d at 987. As the Supreme Court notes:

> The local agencies charged with administering
> regulations governing property development
> are singularly flexible institutions; what they
> take with the one hand they may give back
> with the other.

*MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 350 (1986).

*Fuentes v. Shevin*, 407 U.S. 67, 85 (1972) does not aide Challengers. That case involved repossession of items bought on credit, taken without a hearing — not alleged deprivation of a possible permit. The loss of property was concrete and preceded suit.

Also unhelpful is *Knick v. Township of Scott, Pennsylvania*, ___ U.S. ___, 139 S.Ct. 2162 (2019). There, the Supreme Court held a Fifth Amendment taking claim can be brought in federal court without first exhausting state court remedies. *Id*. at 2170. But, the taking must have occurred; speculation as to future harm does not suffice:

47

> Because of "the self-executing character" of
> the Takings Clause "with respect to
> compensation," a property owner has a
> constitutional claim for just compensation **at
> the time of the taking**. *Ibid*. The government's
> post-taking actions (there, repeal of the
> challenged ordinance) cannot nullify the
> property owner's existing Fifth Amendment
> right: "[W]here the government's activities
> **have already worked a taking** of all use of
> property, no subsequent action by the
> government can relieve it of the duty to
> provide compensation."

*Id*. at 2171 (citations omitted). The trial court correctly declined to
consider Claims 1, 2, and 3 alleging threatened denial of land use
permits until resolution of pending code enforcement cases.

### 2.     The excessive fines claim is also unripe

The trial court, too, correctly found Claim 4 as unripe as no
large fine has yet been imposed on Challengers. 1-ER-26. Challengers
mischaracterize the large fines they fear as already "imposed." But,
fines proposed by notices of violation are not levied — and may
never be, as Graham's modest settlement demonstrates. Fines accrue

only if Challengers are found in violation after hearing, in amounts reflecting sustained findings. Again, the trial court correctly found Challengers speculate. 1-ER-30.

No fines whatsoever have been paid "and it would be highly speculative to assume they ever will." 1-ER-30:13–14. Proposed fines may be modified, decreased, or canceled. 2-ER-275. None may be collected before a final administrative determination and opportunity for judicial review. Both ordinances — 3-ER-584 [HCC §§ 352-7]; 3-ER-586 [HCC §§ 352-8(g),(l)(ii), (iii)], 352-9]; 3-ER-588-589 [HCC §§ 352-12, 352-13] — and notices make this clear (2-ER-250-252 [Graham]; 3-ER-388, 397–399, 3-ER412–414, 3-ER-419–421 [Olson]; 2-ER-135–143 [Thomases]; 4-ER-659, 4-ER-679–681 [Glad]).

Challengers admit as much. Blue at 55. Graham's case is fully resolved and it is now certain he will pay no penalties as a result of the events alleged here. 1-ER-30:10–11; 3-ER-346–349; 3-ER-354–361. The Thomases were named by no notice of violation and have reached a compliance agreement. 1-ER-30:12–13; 2-ER-135–143. Olson's engineer has contacted the County to resolve the violations. 1-ER-27:2–3; 3-ER-450–548. And Glad, like the others, faces only proposed fines. 4-ER-735–736 at ¶¶ 469–470. But, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v.*

*United States*, 523 U.S. 296, 300 (1998). Challengers' penalties are too undeveloped to conclude they are excessive. 1-ER-30.

Challengers misread *Johnson v. City of Grants Pass*, 72 F.4th 868 *petition for cert. filed*, Aug. 25, 2023. Blue at 54. It did not find standing to challenge minimum fines under a camping ordinance as excessive fines. Rather, that case noted the trial court had found an excessive fines violation, but found no need to address it because it was merely "hypothetical" as no fine had yet been imposed. 72 F.4th at 896.

Moreover fines were mandatory in *Johnson* (72 F.4th. at 879 n.9), but are discretionary here. 3-ER-583-584 (HCC § 352-6); 3-ER-588–589 (HCC § 352-12). Administrative and judicial decisionmakers commonly reduce proposed fines. In *County of Humboldt v. Appellate Division of Superior Court*, 46 Cal. App. 5th 298, 304–05 (2020), for example, a proposed cannabis fine of $10,000 for up to 90 days was reduced almost 90 percent to $88,800 after an administrative hearing and the Superior Court further reduced it to $59,200. In *City and County of SF v. Sainez*, 77 Cal. App. 4th 1302, 1308 (2000), an administrative hearing officer suspended all but $3,380 of an $87,000 fine for Building Code violations.

This claim is unripe.

## C.     Challengers Redundantly Sue County Employees

Challengers improperly named individual members of the Board of Supervisors as they allege no individual misconduct — challenging actions of the whole Board. As the trial court found, suit against individuals "is quite literally, only pegged to the fact that they sit on a board that legislated the ordinance in issue." 1-ER-36.

 Naming individual officials in a challenge to an agency's official action is improper. *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). Official-capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n.55 (1978). Once a government receives notice and opportunity to respond, suit is, in all but name, against the entity, not individuals. *Brandon*, 469 U.S. at 471–72. Plaintiffs must look to the entity for damages. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

Moreover, local legislators are absolutely immune from a Section 1983 challenge to any action taken "in the sphere of legitimate legislative activity." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). The immunity applies when officials make discretionary, policymaking decisions in a field in which legislators traditionally have authority. *Id.* at 56. Officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Sampson v. Cty. of Los Angeles by & through Los Angeles Cty. Dep't of Child. & Fam. Servs.*, 974 F.3d 1012, 1018 (9th Cir. 2020). A right is "clearly established" if every reasonable official would understand and have fair warning his conduct violated that right when he acted. *Id.*

Qualified immunity, too, protects officials acting in an executive capacity from Section 1983 claims concerning good faith actions within their authority. *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 578 (9th Cir. 1984). The rule applies to land use decisions like those challenged here. *Kuzinich v. Santa Clara County*, 689 F.2d 1345, 1349 (9th Cir. 1982) (absolute immunity for enacting zoning ordinance; qualified immunity for its enforcement).

Challengers take issue with the County's cannabis code, legislation within its authority. Cal. Const., art. XI, § 7 (police power); Cal. Gov. Code, 65000 *et seq.* (Planning & Zoning Law). Suit against County Supervisors for legislative conduct and the Planning Director for enforcing local laws cannot survive these immunities.

Planning and Building Director Ford, too, is improperly named as the Complaint's allegations allege no actionable conduct beyond that attributed to the County. His discretionary actions enforced County permit laws. 4-ER-728, ¶ 395. If the laws are valid, he faces no liability; if they are not, liability attaches to the County, not him.

## V. THE CLAIMS FAIL SUBSTANTIVELY, TOO

### A. The Procedural Due Process Claim Fails

The trial court concluded Challengers identified no protected liberty or property interest, nor inadequate process, to make a due process claim. *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). Rather, the County's procedures are fulsome and do not needlessly risk erroneous denial of Challengers' property or liberty. 1-ER-40.

#### 1. Challengers identify no property interest

Challengers fail to allege deprivation of protected property interests. *Guatay Christian Fellowship*, 670 F.3d at 984–85. To allege a due process claim, a plaintiff must assert a:

> legitimate claim of entitlement to a benefit, …
> more than an abstract need or desire or
> unilateral expectation of it … that is created
> and defined by existing rules and
> understandings stemming from an
> independent source, such as state law.

*Id.* at 985; *Breneric Assocs. v. City of Del Mar*, 69 Cal. App. 4th 166, 181 (1998). Absent such an interest, a Section 1983 claim does not lie for even arbitrary and capricious denial. In *Guatay*, 670 F.3d at 984, this

Court concluded a notice of violation and cease and desist order are not actionable because they do not deprive a property owner of use of property or entitle the agency to arrest him or to compel him to close his business.

No property interest attaches to a discretionary permit until it is approved. *Breneric*, 69 Cal. App. 4th at 183. For a claim to arise from a mere application for a permit, decisionmakers' discretion must be "so slight" that approval is "virtually assured." *Id.* Even when approval is an "extremely high" probability, any discretion to deny issuance precludes an actionable property right. *Clark v. City of Hermosa Beach*, 48 Cal. App. 4th 1152, 1180–1181 (1996). The rule is applied to discretionary land use approvals in California in many cases. *E.g.*, *Guatay, Breneric, supra*. The same rule applies to permit renewal. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164–65 (9th Cir. 2005). And, of course, Challengers here have not even applied for permits.

The FAC's allegations make clear the permits disputed here were neither "virtually assured" nor ministerial. 4-ER-720, ¶ 309 (permit may issue only for land use allowed by zoning ordinance); ¶ 312 (no guarantee County will issue permit); 4-ER-718, ¶ 288 (County policy not to permit buildings used to grow unpermitted cannabis). Nor can there be dispute that the County's code enforcement efforts reflect the exercise of prosecutorial discretion, from investigation to final determination to decision on any penalty

amount. 4-ER-687 at ¶¶ 49–50, 61–64, 66, 86–122, 256, 508(a), (b) and (e), 509, 570–580; 2-ER-82 (HCC §§352-5, 352-6, 352-11, and 352-12).

Nor do Challengers allege a cognizable property interest in the County's alleged policy to withhold new permits pending correction of zoning violations. A property interest is a legitimate claim of entitlement to a benefit. *Guatay*, 670 F.3d at 985. One must have "more than an abstract need or desire" for or "unilateral expectation" of a claimed property interest, but rather a "legitimate claim of entitlement" based on a statute, contract, or "other clearly implied promise." *Ramos v. Nielsen*, 321 F.Supp.3d 1083, 1121 (N.D. Cal. 2018).

Challengers cannot claim entitlement to nor promise of permits for which they have not applied. And they can claim no land development costs, such as their own engineers' and consultants' fees. Government must deprive a plaintiff of property to trigger due process and ordinary private cost to comply with laws are not such a deprivation. *E.g., Rasmussen v. Garrett*, 489 F.Supp.3d 1131, 1161 (D. Or. 2020). Nor have Challengers paid administrative fees during their pending appeals. Even if Graham paid administrative fees once, he paid them voluntarily pursuant to a reasonable settlement.

### 2. The County gave adequate notice and opportunity for hearing

Challengers cannot establish inadequate notice or opportunity to be heard under the County's procedures for administrative appeal and judicial review of notices of violation and proposed penalties. *Circu v. Gonzales*, 450 F.3d 990, 991 (9th Cir. 2006). Due process does not require hearings as formal as those in court. Hearing before an impartial decisionmaker employed by the agency suffices. *Kennerly v. United States*, 721 F.2d 1252 (9th Cir. 1983). Pre-deprivation review requires only reasonable notice and some opportunity to object. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007).

The County's process allows "notice reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *S.E.C. v. Ross*, 504 F.3d at 1138 (citations omitted). Humboldt County Code section 352's requirements provide adequate notice and opportunity for hearing and otherwise meet due process requirements — §§ 352-4 (notice); 352-7 and 352-8 (notice must identify property, violations, potential penalties); 352-8, 352-10 and 352-12 (hearing rights and procedures). 3-ER-577. That Code requires hearing officers to determine appeals as to violations and penalties on "sworn testimony" of all who wish to

be heard. HCC § 352-11. This satisfies due process under *Mathews v. Eldridge*, 424 U.S. 319 (1976).

Challengers' assertion the notices were obscure or failed to explain when the 10-day compliance clock began does not reflect the record. Blue at 32. Each notice describes the violations asserted in attachments Challengers overlook. 2-ER-134; 2-ER-249; 3-ER-439; 4-ER-653. For example, Attachment A to the Olson notice identifies the relevant Code sections, nature of the violations, conditions causing the asserted nuisance, violation category, and proposed penalty. 3-ER-414. Were anything unclear, Challengers were invited to contact the County for more information. 2-ER-221; 2-ER-274; 3-ER-424; 4-ER-678. The notices, and accompanying cover letters, inform addressees:

- they should comply with local law within 10 days or ask the County for more time;

- penalties will begin to accrue 10 days after the notice is served; and

- they may appeal "within 10 calendar days after service of the Notice."

*E.g.*, 3-ER-388–400. Indeed, each Challenger promptly appealed, suggesting they understood their rights. 2-ER-229; 2-ER-291; 3-ER-447; 4-ER-678. This is notice reasonably calculated to apprise

Challengers of the pendency of the code enforcement actions and an opportunity to object. *Jones v. Flowers*, 547 U.S. 220 (2006). Procedural due process requires no more.

Challengers cite little authority for their contention the notices of violation lacked probable cause. Blue at 28. But, California law allows the County to establish by ordinance the necessary measure of proof. Cal. Gov. Code, § 53069.4. Humboldt County requires a showing that "the violation has occurred." 3-ER-577 (*e.g.*, HCC §352-8(j) & § 352-12). This is sufficient. Nor do the Challenges establish that any of them had a property in compliance with local laws and received an erroneous notice — that they wanted to keep illicit structures is not a claim those structures were lawful.

California Government Code section 53069.4 authorizes local governments to establish administrative processes to enforce any ordinance by imposing fines or penalties — subject to pre-deprivation administrative and judicial review. It is intended "to provide a faster and more cost-effective enforcement mechanism than a criminal prosecution for the violation of a local ordinance." 94 Ops.Cal.Atty.Gen. 39, 43 (2011). "The local agency shall set forth by ordinance the administrative procedures that shall govern the imposition, enforcement, collection, and administrative review by the local agency of those administrative fines or penalties." Cal. Gov. Code, § 53069.4, subd. (a)(1). Any such procedures must allow:

a reasonable period of time, as specified in the

ordinance, for a person responsible for a

continuing violation to correct or otherwise

remedy the violation prior to the imposition

of administrative fines or penalties, when the

violation pertains to building, plumbing,

electrical, or other similar structural or zoning

issues, that do not create an immediate danger

to health or safety.

*Id.*, subd. (a)(2)(A). The County's ordinances and practices comply

with statute — and due process.

### 3.    There was no improper delay

One alleging due process violations by delay must particularly

allege both improper delay and resulting prejudice. *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544 (2007). This circuit has concluded extreme,

prejudicial delay in processing appeals is required to show a due

process violation. *United States v. Antoine*, 906 F.2d 1379, 1382 (9th

Cir. 1990). Prejudice cannot be presumed from delay; a plaintiff must

plead how any delay deprived her of meaningful notice and

opportunity to be heard. Challengers cannot. They allege delay

(during the pandemic) alone — with no showing of prejudice. Even if

they had, the claim fails for several further reasons.

**First**, Humboldt's Code requires a hearing no sooner than 15 days after service of a notice of violation to allow an appellant to prepare for the hearing — the County has all the evidence it needs before it issues an NOV. 3-ER-588 (HCC § 352-11). Due process sets no firm deadline for an administrative appeal; understandably, given the wide range of proceedings to which the doctrine applies. *Aiona v. Judiciary of State of Hawaii*, 17 F.3d 1244, 1250 (9th Cir. 1994). If delay is overly long and prejudicial, a state or federal court could compel timely action. *Id.* at 1383 (listing potential remedies).

**Second**, any delay was substantially due to Challengers' (in)actions, their counsel's delayed communications, or their fitful efforts to resolve violations. For example, the County currently awaits the Thomases' actions to obtain a permit to maintain or to demolish their greenhouse. Their Compliance Agreement stayed all enforcement for six months through April 2022. Their counsel then informed the County they wanted to keep their building under a new County policy (DPS-22-04). 2-ER-245; 3-ER-572; 3-ER-599. The Thomases plead they requested a hearing on September 2, 2021. 4-ER-722, ¶ 326. While no set time requirement for hearings exists, this timeframe does not exceed reason, particularly in a County that has to juggle ordinary building compliance issues with myriad cannabis regulation issues amid global pandemic. Indeed, a trial court recently determined on these facts that two years to hearing is not

unreasonable. 3-ER-562. In *White Circle Commerce, LLC v. County of Humboldt* (2022) Humboldt Superior Court Case No. CV2000623, the Superior Court determined the delay aided plaintiffs by allowing time to seek resolution and time for the County to investigate. 3-ER-3-ER-565. *See also U.S. v. Palma*, 7 Fed. Appx. 748 (9th Cir. 2001) (two-year delay in hearing criminal appeal not excessive); *Antoine*, 906 F.2d at 1382 (three-year delay in criminal appeal "substantial," but not alone sufficient to violate due process).

Moreover, pending these delays, Challengers remain in possession of their properties and their illegal structures. It is the County which seeks to change the status quo, not Challengers. True, they face uncertainty, but can seek certainty by complying with the law, settling with the County or, at very least, applying for necessary permits. Yet they do none of these.

Challengers allege no prejudice from delay. Graham settled his case, waiving any delay claim. 2-ER-346; 3-ER-354. Olson and the Thomases led the County to believe they preferred informal resolution, fitfully seeking remediation approvals. 3-ER-431, 451, 550, 560. Glad did not respond to the County. 4-ER-683. None assert any prejudice from delay or inaction by the County. Indeed, the trial court notes: "[N]o Plaintiff has advanced any plausible non-conclusory assertion of any prejudice attributable to the County

stemming from any delay in the scheduling of any administrative hearings." 1-ER-41–42.

Nor is hearing required before issuance of a notice of violation. A notice **is** notice; it does not require one. *E.g.*, *Walnut Hill Estate Enters. v. City of Oroville*, No. 2:09-cv-00500-GEB-GGH, 2010 WL 2902346, at *6 (E.D. Cal. July 21, 2010) ("Plaintiffs have not pointed to any California law requiring a hearing prior to the issuance of a 'Notice of Repair or Demolish.'")

Challengers will have an administrative hearing and can seek judicial review before the County can deprive them of any property right. Judicial review of an administrative fine is by de novo appeal to Superior Court or by a writ action. *Martin v. Riverside County Dept. of Code Enforcement*, 166 Cal. App. 4th 1406, 1412 (2008). If and when any Challenger is finally ordered to pay a fine, a hearing officer, a trial court judge and an appellate court will all have found adequate basis for it — should Challengers so desire. To the extent human effort can make it so, any erroneous deprivation will be avoided.

### 4.    Challengers face no loss until they exhaust administrative appeals

Challengers attack the potential cost of the administrative process, but have paid no penalties to date. Nor can they allege they paid any administrative fees to appeal the disputed notices of

violation. The FAC itself alleges Challengers' only out-of-pocket costs are fees of consultants, engineers, and lawyers. 4-ER-755. Instead, they claim fines were technically "imposed" by notices proposing them which remain to be adjudicated before Challengers risk payment. Challengers' administrative appeals prevented the fines from becoming due. 3-ER-578 (HCC §§ 352-8(l)(ii) & (iii), 352-12, 352-16(l)). And as is clear from Graham's experience, potential fees can be reduced or forgiven. The County has not deprived Challengers of penalties, and cannot do so until it affords them administrative and judicial review.

### B. The Substantive Due Process Claim Also Fails

Challengers assert denial of substantive due process

> based on [the County's alleged] policy,
> practice, and custom of issuing citations and
> imposing penalties for code violations
> allegedly related to cannabis cultivation
> (a) without regard for probable cause that the
> accused has cultivated cannabis illegally and
> (b) unsupported by a valid governmental
> interest.

4-ER-745 (FAC, ¶ 517.) But probable cause is not required and there is a plain government interest in enforcing land use and building safety

laws. Few people die in California earthquakes, as compared to elsewhere in the world, **because** those laws are enforced.

In any event, as the trial court explained, Challengers cannot meet the high standard for a substantive due process claim:

> Because this case does not involve any plausible allegation that state action either utilized a suspect classification, or drew distinctions among individuals that implicate fundamental rights, or that was arbitrary in the constitutional sense, and because it is clear that all of the complained of land use actions were all eminently related to the legitimate governmental purposes set forth in HCC § 352-2(b)(1)–4, Plaintiffs have not stated — and will not be able to state — a substantive due process claim.

1-ER-47.

Substantive due process is not a substitute for the other, more specific constitutional provisions. Accordingly, a claim must allege a property interest or fundamental right infringed by conduct that "shocks the conscience" or at least suggests gross abuse of authority. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Metroflex Oceanside LLC v.*

*Newsom*, 532 F.Supp.3d 976, 981 (S.D. Cal. 2021). Executive action must amount to an abuse of power lacking any reasonable justification in service of a legitimate governmental objective. *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008); *Brittain v. Hansen*, 451 F.3d 982, 996 (9th Cir. 2006). A claim fails if "[i]t is at least fairly debatable" that a government rationally furthered its legitimate interest by the challenged action. *Brittain*, 451 F.3d at 996.

Challengers don't come close to this high standard. Cannabis is federally illegal and state law allows local governments to prohibit its cultivation. *Gonzales v. Raich*, 545 U.S. 1 (2005); *Maral v. City of Live Oak*, 221 Cal. App. 4th 975 (2013); Cal. Const., art. XI, § 7. Challengers have no right — let alone a constitutionally protected right — to grow cannabis, which is federal contraband and closely regulated by California's state and local governments. That Challengers would prefer otherwise does not make a substantive due process claim.

## I.     **Challengers allege no egregious conduct**

Nor can Challengers allege the County committed egregious conduct or such that shocks the conscience. As the trial court wrote:

> [The County] relied on County records to
> determine whether or not certain structures
> that existed on Plaintiffs' properties were
> permitted or unpermitted — and in the case

of the unpermitted tunnel, the unpermitted

three-story building, the unpermitted

greenhouses, sheds, and other structures, the

unpermitted structures within Streamside

Management Areas, the solid waste piles, the

vehicles improperly being used as residences,

and the junked school bus — the County used

various investigative methods (including a

criminal search warrant) to determine that

these unpermitted structures were erected in

violation of applicable building, plumbing

and/or electrical codes. In other words, a great

many of the code violations in this case were

unrelated to any notion of whether or not

these Plaintiffs (or even their predecessors in

interest) were or were not actively cultivating

cannabis on their properties.

1-ER-43–44. This is not egregious or arbitrary.

"Only egregious conduct can be said to be arbitrary in the

constitutional sense: it must amount to an abuse of power lacking

any reasonable justification in the service of a legitimate

governmental objective." *Shanks*, 540 F.3d at 1088. Examples include

forced pumping of a suspect's stomach, corruption or self-dealing, and ethnic bias. *Giuliani v. Springfield Twp.*, 238 F.Supp.3d 670, 696–97 (E.D. Pa. 2017), *aff'd*, 726 F. App'x 118 (3d Cir. 2018). Examples which fall below this high standard include claims officials delayed permits and approvals, improperly increased tax assessments, and "maligned and muzzled" claimants. *Id.* at 697. The Third Circuit held local officials who intentionally misapplied ordinances and disregarded their state law duty to evaluate land use proposals in good faith did not "shock the conscience." *Highway Materials, Inc. v. Whitemarsh Twp.*, 386 F. App'x 251, 258 (3d Cir. 2010).

There is no shocking behavior here, but a policy dispute about appropriate regulations and how to enforce them — disputes the separation of powers assigns to the political branches. Regulating cannabis commerce is necessary to protect the environment from water quality and other risks, neighbors from unwanted noise and smell, and public safety given that cannabis is highly portable contraband under federal law often traded in cash and protected by dogs and guns.[5] Challengers' claims, such as delayed or denied

---

[5] *E.g.*, N. Lastreto & S. Chaitanya, "Stoned Security: How Cannabis Farmers Protect Themselves in the Emerald Triangle," <https://swamiselect.com/stoned-security-how-emerald-triangle-farmers-protect-themselves/> (as of Nov. 18, 2023). This hearsay news report need not be proven true to suggest a rational basis for the

permits, do not shock the conscience like the rare cases cited *supra*. The County's policy requiring permits for legal cannabis cultivation and plans to remediate illicit grows are routine administrative law enforcement. To find otherwise would bring every land use dispute to federal court in substantive-due-process guise.

### 2.    The cannabis regulations have rational basis

Courts leniently review laws which do not implicate suspect or quasi-suspect classifications or burden fundamental rights, demanding only rational relationship to legitimate interests. Indeed, the Second Circuit recently found rational basis for Schedule I treatment of cannabis, defeating due process and equal protection claims. *United States v. Amalfi*, 47 F.4th 114, 123–124 (2d Cir. 2022). Challengers must show a land use policy lacked **any** rational relationship to a government interest — an "exceedingly high burden." *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 485 (9th Cir. 2008); *Shanks*, 540 F.3d at 1088.

The County's ordinances do not implicate suspect or quasi-suspect classifications, or burden fundamental rights, requiring only rational basis review. Many conceivable public health and safety grounds rationally relate the County ordinances to appropriate

_____

County's policy.

government interests. *E.g.*, *United States v. Amalfi*, 47 F.4th 114. Challengers fail to show that cannabis regulation lacks a rational relationship to such interests as environmental quality, residential quality of life, and fair competition with those who bear the burdens to operate in California's nascent legal market for cannabis.

This is not post hoc rationalization — although rational-basis review allows that. The Board of Supervisors found these ordinances:

- protect the public's health, safety, and welfare;

- provide an administrative process that employs objective criteria for the imposition of penalties;

- provide a means of properly penalizing persons who fail or refuse to comply with the County's code and its other ordinances; and

- minimize expense and delay associated with pursuing alternative remedies through the civil and criminal justice system.

2-ER-79 (HCC § 352-2(b)(1)–(4)).

## C. The Alleged Exactions Were Constitutional

Citing the Takings Clause's unconstitutional-conditions doctrine, Challengers attack an alleged County policy to deny new

land use permits to landowners who persist in Category 4 violations. They argue the County uses this to induce owners to settle administrative proceedings. But there is no right to maintain illegal construction. *Sweeney v. Cal. Regional Water Quality Control Bd.*, 61 Cal. App. 5th 1093 (2021). And there is no showing the County has ever sought to impose a choice between a government benefit and the exercise of a constitutionally guaranteed right. 1-ER-52.

The unconstitutional conditions doctrine reflects a conclusion that government may not deny a discretionary benefit to someone due to his exercise of a constitutional right. *Ballinger v. City of Oakland*, 24 F.4th 1287, 1298 (9th Cir. 2022); *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604, 612 (2013).

Challengers claimed an alleged "practice of denying permits" unless property owners agree to:

(a) pay a sum of money the County has proposed in an unrelated settlement agreement;

(b) waive their due process right to a hearing at which they can contest unrelated code violations;

(c) consent to warrantless searches of their property; and

(d) waive their right to sell or otherwise

transfer their property.

1-ER-51.

But, none of these assertions is plausible on this record. No sum is due unless voluntarily agreed or fully adjudicated. Administrative hearings are provided by State statute and local ordinance and Challengers have invoked them. All searches here were based on consent or search warrants issued by neutral magistrates. And nothing in this record suggests the County has demanded a waiver of the right to alienate property. True, owning property containing illegal structures is burdensome, but the County need not countenance lawlessness to alleviate that burden.

Accurately describing Challengers' claim as based on a faulty foundation, the trial court understood it, but found it baseless. 1-ER-48. It found no Challenger but Graham made a settlement, and he paid only a few hundred dollars for a remedial permit issued on the spot. 1-ER-52:27–28. None waived any constitutional rights in exchange for settlement. 1-ER-52:12–20.

### 1. Permits are not unconstitutional exactions

Challengers argue their claim relates only to "non-remedial" permits, citing a "Safe Home" permit to allow existing non-compliant structures to be repurposed. Blue at 47; 2-ER-245–248. Even if this

remedial / non-remedial distinction mattered, a permit to allow a non-compliant structure to be repurposed and retained can only be characterized as "remedial" — remedying its previously uninspected and unlawful character. As the trial court found, the only permit any Challenger obtained (Graham's) was remedial and granted without onerous conditions. 1-ER-52:1–2; 1-ER-51:24–25.

Challengers conflate emails and requests for permits with permit applications, but identify no constitutionally guaranteed right the County has conditioned. As demonstrated above, there is no property right in an application for a discretionary land use approval. 1-ER-32:24–28; 1-ER-33:1–4. The trial correctly assessed: "Plaintiffs have not shown — and in the court's opinion will not be able to show — that the County has ever sought to impose a choice between a government benefit and the exercise of a constitutionally guaranteed right." 1-ER-51:17–19.

## 2. Settlement conditions serve the public health, safety, and welfare

When a settlement condition is challenged as unconstitutional, courts seek "a close nexus —  a tight fit— between the specific interest the government seeks to advance in the dispute … and the specific right waived." *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1399 (9th Cir.1991). A waiver of the right to sue in

exchange for halting demolition of property is closely connected to government's interest in resolving a dispute and enforcing its laws — the interests the County asserts here. *Emmert Indus. Corp. v. City of Milwaukie, Or.*, 307 F. App'x 65, 67 (9th Cir. 2009). Such is not an unconstitutional condition. So, for example, stringent stipulated penalties triggered by non-compliance with a settlement of a CERCLA clean-up action were found not to be unconstitutional conditions. *Louisiana Pacific Corp. v. Beazer Materials & Services, Inc.*, 842 F.Supp. 1243, 1251–1255 (E.D. Cal. 1994). When post misconduct has been prolonged, promises to "go forth and sin no more" may reasonably be conditioned on meaningful incentives to perform.

Here, compliance agreements require inspections to confirm compliance, require corrective actions including obtaining permits, limit transfer of property until compliance is achieved, and impose fines if compliance does not follow. 2-ER-280-281 (§§ 2(B), (D), (G). These conditions bear a close connection to the County's interest in resolving cases and enforcing its laws. Inspections ensure actual compliance. Ordinances require permits. Sales of properties with illegal structures delay compliance and ensnare unwary buyers, as Challengers claimed to be. And stipulated conditional fines are necessary incentives to perform.

Challengers misinterpret *Koontz* and *Nollan / Dolan* cases to require proportionality between the settlement conditions the County

requests and the impacts of those demands upon plaintiffs. Blue at 46. But these are bargained agreements, not the unilaterally imposed conditions those cases govern. Moreover, Challengers overlook impacts on the public from the unlawful conditions on their properties. Under these cases, government's demands of property owners must be proportionate to land uses' impacts on the public — not the property owner. *Koontz*, 570 U.S. at 596 ("government's legitimate need to offset the public costs of development through land use exactions").

*Nollan v. California Coastal Comm'n*, 483 U.S. 825, 837 (1987), requires logical nexus between a condition on a land use approval and the impacts of that development on public interests. As shown above, the conditions of which Challengers complain are logically related to the County's interests in enforcing its laws. 1-ER-47:5–7, 15-20; 2-ER-79 (HCC §352-2(b)(i)).

*Dolan v. City of Tigard*, 512 U.S. 374, 391 (1994) extended *Nollan* to require not just logical nexus, but "rough proportionality" between the extent of an exaction on land development and the impact of that development on the public interest. Nothing in this record suggests overreach by the County — the challenged conditions provide for inspection only of property that is the subject of code enforcement, require only permits for unpermitted structures and activities on that site, limit transfer of only that site and only while its illicit conditions

remain, and impose fines only for noncompliance with the settlement agreement as to that site.

*Koontz*, *Nollan* and *Dolan* do not provide the frame of analysis here. But even if they did, the County's allegedly standard terms of settlement meet their test.

### 3. Administrative fines are not unconstitutional exactions

The County exacted nothing from Challengers so as to offend the Constitution. **First**, the County conditioned what Challengers label a "non-remedial" permit on settlement. None but Graham applied for any permit and his was remedial. 3-ER-358; 2-ER-270. That approval granted forgiveness, because Graham had not sought permission.

**Second**, the County compelled no waiver of rights. No Challenger must settle; only Graham has. Challengers could make compliance agreements, comply with local laws (obtaining remedial permits and inspections if necessary), or contest the County's assertion they have not yet done so. There is no right to violate local law and measures to enforce it are not compelled waivers, exactions, or unconstitutional conditions.

**Third**, even if  compliance or a compliance agreement is required to obtain permits for new land uses, there is a close nexus

between the public interest in compliance with building safety and land use laws and forbidding new developments while violations persist. Challengers have no right to maintain an illegal condition of property and to further develop it. *Ballinger v. City of Oakland*, 24 F.4th 1287, 1298 (9th Cir. 2022). Olson, for example, could properly be denied a permit to build a house until her property complies with building safety and land use laws since the County could compel that compliance. If the stick is lawful, the carrot is, too.

### D. The Excessive Fines Claim Fails

#### 1. The Excessive Fines Clause does not apply to remedial measures

If this claim were ripe, it would fails on its merits, too. First, the Excessive Fines Clause does not apply to orders to abate Code violations. Blue at 63–65. "The Clause prohibits only the imposition of 'excessive' fines, and a fine that serves purely remedial purposes cannot be considered 'excessive' in any event." *Austin v. U.S.*, 509 U.S. 602, 609–10, 622 n.14 (1993). On such claims, courts consider a law's language, purpose, and circumstances. *United States v. Bajakajian*, 524 U.S. 321 (1998).

Challengers cite no case applying the Excessive Fines Clause to a nuisance abatement order. Abatement of unlawful and potentially unsafe structures (like an unpermitted and uninspected tunnel under

a building here) is remedial, not punitive. Illegal construction is, in effect, contraband, and the Constitution is not offended when one is obliged to surrender it. Abatement's primary purpose is elimination of nuisance; not punishment. *E.g.*, *Golden Gate Water Ski Club v. County of Contra Costa*, 165 Cal. App. 4th 249 (2008); *Rose v. City of Coalinga*, 190 Cal. App. 3d 1627 (1987). Municipalities have broad police power to minimize danger to persons and property. Requiring landowners to restore property to lawful use is likewise remedial, intended to remove a nuisance. It is this logic which explains this Court's conclusion in *Johnson*, 72 F.4th at 895 that injunctive relief alone  cannot be an excessive fine.

Moreover, remedial measures aid rather than punish property owners, preventing further illicit use of property and making it saleable. *Bennis v. Michigan*, 516 U.S. 442, 452 (1996). Such corrections may increase a property's value. *City of Bakersfield v. Miller*, 64 Cal.2d 93, 103 (1966). If nothing else, this potential benefit confirms that challenge is unripe as to fines and abatements the County has not — and may never — impose.

### 2.      The proposed fines are not disproportionate

The Eighth Amendment bars only excessive fines. *United States v. Bajakajian*, 524 U.S. at 327. To avoid the Excessive Fines Clause, a forfeiture must fulfill two conditions: property forfeited must be an

"instrumentality" of crime and its value must be proportional to the owner's culpability. *Id.* at 326. Proportionality can be judged only in light of a fine actually imposed and its circumstances. *Pimentel v. City of Los Angeles*, 974 F.3d 917, 923 (9th Cir. 2020).

> To determine whether a fine is grossly disproportional to the underlying offense, four factors are considered:
>
> (1) the nature and extent of the underlying offense;
>
> (2) whether the underlying offense related to other illegal activities;
>
> (3) whether other penalties may be imposed for the offense; and
>
> (4) the extent of the harm caused by the offense.

*Id.* at 921.

As no penalties have yet been imposed, this assessment cannot yet be made. But precedent suggests even the penalties proposed here would be proportionate. So, for example, *People v. Braum*, 49 Cal. App. 5th 342 (2020) upheld a $6 million fine on a landlord for tenant's illicit use of property as marijuana dispensary. *City and County of San*

*Francisco v. Sainez*, 77 Cal. App. 4th 1302, 1322 (2000) allowed a $663,000 civil penalty for Housing Code violations. *Lent v. California Coastal Com*., 62 Cal.App.5th 812 (2021) upheld a $4.185 million fine for blocking public beach access.

Challengers argue fines are disproportionate because they are "innocent purchasers." Blue at 60. Such a rule would make the right to violate local laws marketable to the willfully blind. As the trial court noted,

> [i]t should not escape mention that all of these Plaintiffs (either knowingly or with constructive knowledge) purchased properties with presumably obvious pre-existing code violations — in other words, they all bought their way into existing code enforcement matters.

1-ER-30.

Moreover, Challengers are not innocent — they knowingly maintain illicit conditions on their properties. State and local law reasonably make property owners responsible for such violations. *Erlach v. Sierra Asset Servicing LLC*, 226 Cal. App. 4th 1281, 1295 (2014); *People v. Braum*, 49 Cal. App. 5th 342, 362 (2020).

*Pimentel v. City of Los Angeles*, 974 F.3d 917, 922 (9th Cir. 2020) does not aid Challengers. It held that, to be excessive, a fine must be "grossly disproportional to the gravity of the defendant's offense" — requiring review of a violator's proven actions, not a hypothetical. *Id.* at 921. It requires an individualized evaluation of a fine actually assessed, not potential and maximum fines. *Id.* at 922. It confirms that the excessive fine claim is unripe here until a fine is imposed.

Challengers argue without authority that the fines are necessarily disproportionate to cannabis offenses, and the County does not individually assess culpability. Blue at 64. The first is a policy dispute; the second, just wrong. The County requires hearing officers to assess individual culpability. 3-ER-583–584 (HCC § 352-6).

Challengers claim harm from their violations is minor. But this judgment is for legislators. Cannabis is contraband under federal law. *Gonzales v. Raich*, 545 U.S. 1 (2005). The County's police powers allow it to prohibit cannabis cultivation, or otherwise mitigate its impacts on neighbors. *Maral v. City of Live Oak*, 221 Cal. App. 4th 975 (2013). Permit fees avoided do not measure the harm of unlawful cannabis cultivation on Thomases' and Olson's properties. 2-ER-138; 3-ER-388. Retaining illicit greenhouses facilitates renewed unlawful cultivation, a legitimate concern of the County and those it serves.

### E. There is No Jury Right in Administrative Hearings

Challengers have no legal claim to a jury. They concede as much — acknowledging well-established Circuit precedent. 1-ER-35; *Jackson Water Works, Inc. v. Pub. Utils. Com.*, 793 F.2d 1090, 1096 (9th Cir. 1986). Yet they ask this Court to ignore stare decisis, and rewrite Seventh Amendment precedent. This petit panel is no more free to do so than was the trial court.

A legislature may establish administrative instead of legal remedies. *Atlas Roofing Co. v. OSHRC*, 430 U.S. 442, 450 (1977). Challengers argue the administrative fines here are civil penalties subject to a jury right, citing *Tull v. United States*, 481 U.S. 412 (1987). But *Tull* involved a statutory civil penalty Congress established for environmental violations. It did not involve a dispute delegated to an administrative body. *Atlas Roofing Co. v. OSHRC*, 430 U.S. 442, 450 (1977) is the more apt, upholding a federal statute allowing administrative hearing of statutory penalties without a jury. The Seventh Amendment does not prohibit legislatures from establishing rights and remedies and enforcing them before administrative bodies. *Id.* at 460. And civil penalties and administrative orders are enforced in equity, not law.

Indeed, legislatures are not obligated to provide the right of appeal or a jury trial in administrative adjudication. *Jackson Water*, 793 F.2d at 1096. Administrative remedies may eliminate rights

available in court when the public interest is served by such a forum. *Id.* Administrative remedies need only satisfy due process. *Kennerly v. United States*, 721 F.2d 1252, 1256 (9th Cir. 1983).

The County selected an administrative forum as statute allows. Cal. Gov. Code, § 53069.4. Doing so allows "a faster and more cost-effective enforcement mechanism than a criminal prosecution for the violation of a local ordinance." *Cnty. of Humboldt v. App. Div. of Superior Ct.*, 46 Cal. App. 5th 298, 305 (2020). Administrative adjudication does not require a jury. *McHugh v. Santa Monica Rent Control Bd.*, 49 Cal.3d 348, 381–82 (1989) (citing *Atlas Roofing*).

The jury claim must fail before this petit panel and should fail before an en banc panel, too. The foundations of the modern administrative state are sunk too deep to be uprooted now.

## VI.    REASSIGNMENT ON REMAND IS UNWARRANTED

This Court should affirm, making remand unnecessary. But, if remand is ordered, Challengers do not meet the high stand to compel reassignment to a new trial judge. Reassignment is warranted under circumstances that "rarely exist." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1034 (9th Cir. 2012). Challengers make no showing Magistrate Judge Illman could not adjudicate fairly upon remand, nor that a new judge is needed to preserve the appearance of justice. *United States v. Arnett*, 628 F.2d 1162, 1165 (9th Cir. 1979).

Magistrate Judge Illman rendered a detailed and thoughtful decision on the evidence before him; surely he can do the same if this Court orders renewed trial on different evidence or under a different standard. This is not the rare circumstance in which a trial judge's conduct displays clear inability to be fair. Challengers show no actual bias or prejudice, only a cogent opinion compellingly stated.

Indeed, Challengers expressly consented to this adjudicator for all purposes — likely to appear before the one federal jurist on California's North Coast, avoiding a four-and-half-hour drive to San Francisco. 28 U.S.C. §636(c); N.D. Cal. Form 10-2020; 4-ER-771. That they are unhappy with the result, and desire a new judge now, is not sufficient —such judge-shopping is prohibited.

## VII. CONCLUSION AND DISPOSITION

For any or all of procedural and substantive reasons detailed *supra*, the County respectfully requests this Court affirm and award the County its costs on appeal.

DATED:  November 21, 2023

**COLANTUONO, HIGHSMITH & WHATLEY, PC**


_____

MICHAEL G. COLANTUONO
PAMELA K. GRAHAM
JOHN A. ABACI
Attorneys for Appellees
COUNTY OF HUMBOLDT, et al.

## STATEMENT OF RELATED CASES

Defendants-Appellees are unaware of any related cases.

DATED:  November 21, 2023          **COLANTUONO, HIGHSMITH &**
                                   **WHATLEY, PC**


_____
MICHAEL G. COLANTUONO
PAMELA K. GRAHAM
JOHN A. ABACI
Attorneys for Appellees
COUNTY OF HUMBOLDT, et al.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-15847

I am the attorney or self-represented party.

**This brief contains** | 13,547 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.
[ ] a party or parties are filing a single brief in response to multiple briefs.
[ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated _____.

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Pamela K. Graham | **Date** | 11/21/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**       *Rev. 12/01/22*