In The

# United States Court of Appeals
## For The Ninth Circuit

**CORRINE MORGAN THOMAS**, *et al.*,

*Plaintiffs-Appellants,*

v.

**COUNTY OF HUMBOLDT, CALIFORNIA**, *et al.*,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
NO. 1:22-cv-5725-RMI
HON. ROBERT M. ILLMAN

---

### REPLY BRIEF OF APPELLANTS

---

**PILLSBURY WINTHROP SHAW PITTMAN LLP**
Thomas V. Loran III
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111
(415) 983-1865
thomas.loran@pillsburylaw.com

Derek M. Mayor
500 Capitol Mall, Suite 1800
Sacramento, CA 95814
(916) 329-4703
derek.mayor@pillsburylaw.com

**INSTITUTE FOR JUSTICE**
Jared McClain
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
(703) 682-9320
jmcclain@ij.org

Robert Johnson
16781 Chagrin Blvd., Suite 256
Shaker Heights, OH 44120
(703) 682-9320
rjohnson@ij.org

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ...................................................................... iii

INTRODUCTION ...................................................................................... 1

I.    Plaintiffs' Claims Are Justiciable ........................................................ 3

    A. Plaintiffs' Facial Claims Are Timely .............................................. 3

    B. Plaintiffs' As-Applied Claims Are Timely ...................................... 4

    C. Plaintiffs' Claims Are Ripe ............................................................ 5

        1.  Plaintiffs' Claims Relating to Their Ineligibility for Permits Are Ripe ........................................................................................ 6

        2.  Plaintiffs' Eighth Amendment Claim is Ripe ............................. 9

II.    The County's Cannabis-Related NOVs Are Unconstitutional ............ 10

    A. The Trial Court Disregarded Well-Pleaded Facts ......................... 10

    B. Plaintiffs Stated Five Claims for Relief ........................................ 13

        1.  Procedural Due Process .............................................................. 13

        2.  Substantive Due Process ............................................................ 21

        3.  Unconstitutional Conditions ...................................................... 25

        4.  Excessive Fines .......................................................................... 28

        5.  Jury Right ................................................................................... 31

III.    Reassignment Would Prevent Injustice ............................................. 32

CONCLUSION ....................................................................................... 34

CERTIFICATE OF COMPLIANCE................................................................... 35

# TABLE OF AUTHORITIES

**PAGE(S)**

## Cases

*Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Operation Board*, 509 F.3d 1020 (9th Cir. 2007) ....................................................... 3

*Atlas Roofing Co. v. OSHA*,
430 U.S. 442 (1977) ..................................................................... 32

*Barry v. Barchi*,
443 U.S. 55 (1979) ................................................................ 18, 20

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007) ......................................................... 4

*Bird v. Dep't of Hum. Servs.*,
935 F.3d 738 (9th Cir. 2019) ......................................................... 5

*Carey v. Piphus*,
435 U.S. 247 (1978) ..................................................................... 27

*Cheffer v. Reno*,
55 F.3d 1517 (11th Cir. 1995) ......................................................... 9

*County of Humboldt v. App. Div. of Super. Ct.*,
46 Cal. App. 5th 298 (2020) .......................................................... 9

*Dolan v. City of Tigard*,
512 U.S. 374 (1994) ..................................................................... 26

*Evon v. Law Offices of Sidney Mickell*,
688 F.3d 1015 (9th Cir. 2012) ....................................................... 33

*FDIC v. Mallen*,
486 U.S. 230 (1988) ..................................................................... 18

*Firestone Fin. Corp. v. Meyer*,
796 F.3d 822 (9th Cir. 2015) ......................................................... 10

*Foucha v. Louisiana,*
    504 U.S. 71 (1992) ............................................................23–24

*Granfinanciera, S.A. v. Nordberg,*
    492 U.S. 33 (1989) ...................................................................... 32

*Guatay Christian Fellowship v. County of San Diego,*
    670 F.3d 957 (9th Cir. 2011).................................................... 7, 8

*Guiliani v. Springfield Twp.,*
    238 F. Supp. 3d 670 (E.D. Pa. 2017) ....................................... 24

*Halverson v. Skagit County,*
    42 F.3d 1257 (9th Cir. 1994)................................................ 22, 25

*Harris v. County of Riverside,*
    904 F.2d 497 (9th Cir. 1990)................................................ 8, 14

*Highway Materials, Inc. v. Whitemarsh Twp.,*
    386 F. App'x 251 (3d Cir. 2010) ............................................... 24

*Hoehne v. County of San Benito,*
    870 F.2d 529 (9th Cir. 1989).......................................................7

*In re Gilead Sci. Secs. Lit.,*
    536 F.3d 1049 (9th Cir. 2008) ............................................10, 12

*In re Ruffalo,*
    390 U.S. 544 (1968) ....................................................................15

*Ingram v. Wayne County,*
    81 F.4th 603 (6th Cir. 2023) ...................................................... 18

*Jensen v. EXC, Inc.,*
    82 F.4th 835 (9th Cir. 2023) ....................................................... 11

*Khoja v. Orexigen Thera., Inc.,*
    899 F.3d 988 (9th Cir. 2018) ............................................... 11, 13

*Kinzli v. City of Santa Cruz,*
    818 F.2d 1449 (9th Cir. 1987).......................................................7

iv

*Koontz v. St Johns River Water Mgmt. Dist.,*
    570 U.S. 595 (2013) .................................................................... 27

*Langley v. City of San Luis Obispo,*
    No. 21-cv-07479, 2022 WL 18585987 (C.D. Cal. Feb. 7, 2022) .............. 28

*Lent v. Cal. Coastal Comm'n,*
    62 Cal. App. 5th 812 (2021) ...................................................... 29

*Lyons v. England,*
    307 F.3d 1092 (9th Cir. 2003) ...................................................... 5

*Patsy v. Bd. of Regents,*
    457 U.S. 496 (1982) .................................................................... 21

*People v. Braum,*
    49 Cal. App. 5th 342 (2020) ...................................................... 29

*Pompey Coal Co. v. Borough of Jessup,*
    No. 3:20-cv-358, 2021 WL 1212586 (M.D. Pa. Mar. 31, 2021) ..........24–25

*Santosky v. Kramer,*
    455 U.S. 745 (1982) ....................................................................17

*Scheer v. Kelly,*
    817 F.3d 1183 (9th Cir. 2016) ...................................................... 3

*St. Ann v. Palisi,*
    495 F.2d 423 (5th Cir. 1974) ...................................................... 23

*Stypmann v. City & Cnty. of San Francisco,*
    557 F.2d 1338 (9th Cir. 1977) ......................................................17

*Sweeney v. Cal. Reg'l Water Quality Ctrl. Bd.,*
    61 Cal. App. 5th 1093 (2021) ...................................................... 29

*Tull v. United States,*
    481 U.S. 412 (1987) .................................................................... 32

*United States v. $49,576.00 in U.S. Currency,*
    116 F.3d 425 (9th Cir. 1997) ......................................................17

*United States v. $8,850 in U.S. Currency,*
    461 U.S. 555 (1983) ............................................................... 18, 20

*United States v. Antoine,*
    906 F.2d 1379 (9th Cir. 1990) ...........................................20

*United States v. Crozier,*
    777 F.2d 1376 (9th Cir. 1985) ...........................................20

*United States v. Palma,*
    7 F. App'x 748, 750 (9th Cir. 2001) .................................20

*United States v. Reyes,*
    313 F.3d 1152 (9th Cir. 2002) ...........................................33

*United States v. Rivera,*
    682 F.3d 1223 (9th Cir. 2012) ...........................................33

*Walters v. Reno,*
    145 F.3d 1032 (9th Cir. 1998) ...........................................15

*White Circle Comm., LLC v. Humboldt County,*
    Case No. CV2000623 (Humboldt Cnty. Super. Ct. 2022) ....................... 19

*Witt v. Dep't of Air Force,*
    527 F.3d 806 (9th Cir. 2008) ............................................ 24

*Yagman v. Garcetti,*
    852 F.3d 859 (9th Cir. 2017) ...........................................17

**INTRODUCTION**

Humboldt County violated Plaintiffs' constitutional rights by trapping them in a system designed to punish cannabis growth, even though none of them grew cannabis. Plaintiffs alleged that the County used satellite images to identify minor code violations on their properties and then imposed tens of thousands of dollars in *daily fines* by charging, without proof, that those violations related to cannabis. Plaintiffs' fines accumulated for 90 days because the County makes it impossible to "abate" cannabis-related violations and does not provide hearings to contest the charges. All the while, Plaintiffs remain ineligible for land-use permits—both to correct existing violations and to develop their properties in other ways. Because the County won't schedule hearings, a settlement agreement is the only way out of penalties assessed without probable cause.

Plaintiffs are all victims of the County's blanket enforcement practices. Like many people in Humboldt, they own properties that were developed over the years without permits. Some developed the land themselves; others bought land from someone who did. No Plaintiff, however, violated the code to grow cannabis. The baseless allegation that they did has upturned Plaintiffs' lives. Each accrued over a million dollars in fines, with no way out except to pay the County for their freedom.

Even now, after Plaintiffs have spent years under the weight of crippling fines, unable to develop their land, the County still insists that they have no right to challenge the County's enforcement practices. According to the County, a court cannot consider whether its abatement program is unconstitutional until Plaintiffs escape the trap the County set. The County says that Plaintiffs' claims are simultaneously unripe and time-barred. In the County's view, the time is never right for accountability.

Unable defend the constitutionality of its cannabis-abatement orders, the County obfuscates. It defends a different system than the one it's enforced against hundreds of innocent residents. For large parts of its response, the County pretends this is just a typical abatement case over land-use violations that have nothing to do with cannabis. But when pressed for its interest in imposing multimillion-dollar fines without probable cause, the County pivots to the dangers of cannabis.

The trial court fell for the County's bait and switch. To do so, though, the court had to disregard the standard for reviewing motions to dismiss. In ostensible reliance on documents the County attached to its motion, the trial court decided that it didn't even need oral argument to be certain that Plaintiffs' allegations were all completely implausible. Had the court

properly credited the complaint, it should have been easy to conclude that Plaintiffs' well-pleaded allegations state five justiciable claims.

Plaintiffs ask this Court to reverse and remand the case to a judge who has not predetermined Plaintiffs' case.

## I.    Plaintiffs' Claims Are Justiciable

### A. Plaintiffs' Facial Claims Are Timely

Plaintiffs' facial Excessive Fines challenge is timely because they sued within two years of the County fining them.  The County, like the trial court, misreads *Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Operation Board*, 509 F.3d 1020 (9th Cir. 2007), for a bright-line rule that all facial challenges must be brought within two years of a law's passage. Red-40.  But this Court has already rejected that reading in *Scheer v. Kelly*, 817 F.3d 1183, 1187 (9th Cir. 2016).  *Action Apartment*'s rule applies only when a new law, like rent control, automatically diminishes a property's use or value.  *Scheer*, 817 F.3d at 1187.  Plaintiffs' Excessive Fines challenge is not "too late" because they were not subject to the challenged penalties until the County issued notices of violations ("NOVs").

## B. Plaintiffs' As-Applied Claims Are Timely

Plaintiffs' as-applied claims are also timely, as Rhonda and the Thomases sued within two years of receiving their NOVs, and Plaintiffs have all been continually trapped in the County's unconstitutional process.

The County argues that Plaintiffs had to sue within two years of receiving their NOVs and that only the Thomases did. Red-41. That's a misstatement, at best. Rhonda also received NOVs within the limitation period. Blue-17 (citing 4-ER-734). The County's strategic omission of Rhonda's April 2022 NOVs does not change the fact that, even under its own theory, Rhonda's claims are also timely. *Cf. Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc) ("In a class action, standing is satisfied if at least one named plaintiff meets the requirements.").

As for Blu and Cyro, their claims also accrued within the two-year limitation period, even though they received NOVs more than two years before filing. Blue-17. For one, the NOVs did not alert them to the bulk of their claims, including the undue pressure and delay that the County began imposing *after* they appealed. As the County acknowledges elsewhere, a claim for undue delay arises only when the delay becomes unreasonable. Red-59-61.

Moreover, the County's arguments (Red-42-43) understate the continuing viability of the continuing-violations doctrine, which still applies when a denial of process or deprivation of rights continues into the limitations period. *See Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 748-49 (9th Cir. 2019). The County has denied Plaintiffs a hearing every day since they requested one. And its ongoing exclusion of Plaintiffs from the permitting process continues with the delay. *See id.* (distinguishing an untimely claim from one challenging an order forbidding plaintiffs' use of roads, "thereby depriving him every day" of his right to travel). Moreover, the continuing-violations doctrine still applies to a "class-wide pattern-or-practice claim based on a series of discrete acts[.]" *Lyons v. England*, 307 F.3d 1092, 1107 n.8 (9th Cir. 2003). Blu and Cyro's claims are also timely.

### C. Plaintiffs' Claims Are Ripe

Plaintiffs' opening brief explained that the trial court (1) ignored settled ripeness law for Eighth Amendment claims by holding that Plaintiffs do not have standing until they pay a fine, Blue-51-53; and (2) erred by holding Plaintiffs' *allegations* were unripe, even though ripeness applies only to claims, Blu-22-25. Nothing the County says rebuts either point.

### 1. Plaintiffs' Claims Relating to Their Ineligibility for Permits Are Ripe

Plaintiffs have needed various permits for their properties during the years their abatement cases have been pending. But the County made them categorically ineligible for *any* permits while it delays resolution of their cannabis-abatement orders. This policy deprives them of their full use and enjoyment of their property. Blue-26-27. The trial court, however, held that Plaintiffs' factual allegations relating to their ineligibility were unripe because they have not applied for any permits. 1-ER-32, -38. That isn't true, as Plaintiffs pointed out in their opening brief: Blu submitted a Safe Home application in March 2022, and Rhonda asked to start the application process for a septic permit but was told she was ineligible. Blue-23.

The County responds that all *claims* relating to permits are unripe because the County has not formally denied Plaintiffs any permits. Red-41. In other words, Plaintiffs can't challenge their ineligibility for permits because they're ineligible for permits. The County manufactures this Catch-22 from cases that have nothing to do with the ineligibility for permits. With no case on point, it tries to extrapolate from the rule that inverse-condemnation claims are not ripe until a final decision prohibits the

plaintiffs' desired use. Of course, it's impossible for Plaintiffs to receive a final decision from a process the County won't let them complete.

A quick review of the County's cases reveals why they don't provide the relevant legal standard. *See* Red-41-45. As mentioned, those cases are about when a court can consider if the government violated a plaintiff's rights by prohibiting a specific land use (often without just compensation). *Guatay Christian Fellowship v. County of San Diego*, 670 F.3d 957, 964-67 (9th Cir. 2011); *Hoehne v. County of San Benito*, 870 F.2d 529 (9th Cir. 1989); *Kinzli v. City of Santa Cruz*, 818 F.2d 1449 (9th Cir. 1987).

*Kinzli* and *Hoehne* held that inverse-condemnation claims require a plaintiff to apply for a permit or variance before the court can determine if an ordinance prohibits their desired use. In *Kinzli*, developers wanted to build high-density housing but did not seek a special-use permit to do so. 818 F.2d at 1451-52. This Court held that the developers' failure "to secure a 'final decision' from the City regarding applicable uses" meant their takings claim wasn't ripe. 818 F.2d at 1455; *cf. Hoehne*, 870 F.2d at 533 (completion of zoning process ripened claim).

*Guatay* applied the same rule to a religious-liberty claim that a zoning law prohibited churches. The church, however, never sought a permit to

operate, so its claim was unripe since it could not establish that the code prohibited church services.[1]  670 F.3d at 967-68, 984.

The ripeness rule for takings cases doesn't govern Plaintiffs' challenge to the adequacy of the process in which they're trapped.   Plaintiffs' claims do not contest the prohibition of a specific land use.  They do not, for example, argue that the County must permit Rhonda's septic or Blu's home. Instead, Plaintiffs allege that the County's policy of refusing *all* permits to people facing cannabis-abatement orders deprives them of their full use and enjoyment of their property, as part of a broader due-process failure.  *See Harris v. County of Riverside*, 904 F.2d 497, 503-04 (9th Cir. 1990) (landowner entitled to due process "before the County deprived him" of his use of his land as an ATV park).  The County's proposed rule would make its policy untouchable.  Plaintiffs' exclusion from a process cannot stop them from challenging their exclusion from that process.

And factually, the County's wrong that no Plaintiff applied for a permit.  Blu submitted his Safe Home application in March 2022, and the County told him it would not issue him any permits—just as they told

---

[1] *Guatay* also noted that the notice of violation had no legal force; the county was powerless without first "bringing the church to court."  670 F.3d at 984.  By contrast, the County's NOVs impose fines automatically after 10 days without any need for the County to establish its case before a court or administrative judge.  Blue-6-7.

Rhonda.  Blue-23.  These allegations are sufficient to demonstrate Plaintiffs' ineligibility for permits.  Their related process claims are all ripe.

## 2. Plaintiffs' Eighth Amendment Claim Is Ripe

The trial court held that Plaintiffs lacked standing to bring their Excessive Fines claim because they have not paid their fines.  Plaintiffs detailed in their opening brief how that holding misapplied settled standing law.  Blue-49-56.  Eighth Amendment claims ripen when the enforcement of a challenged penalty is "immediately impending."  *Cheffer v. Reno*, 55 F.3d 1517, 1523-24 (11th Cir. 1995).

The County's response hardly engages with the law.  Red-48-50.  It offers no reason why the general rule from *Cheffer* does not apply except for its insistence that Plaintiffs won't have to pay all the fines they've accrued.  The County points to a state court that, in its mercy, reduced one of the County's cannabis-enhanced fines because the full penalty "would effectively divest the property owner of ownership which is contrary to the purpose of Code Enforcement goals."  *County of Humboldt v. App. Div. of Super. Ct.*, 46 Cal. App. 5th 298, 312 (2020).

Nothing in *County of Humboldt* suggests that a federal court cannot consider a penalty's constitutionality once a plaintiff faces an imminent threat of enforcement.  Blue-53-54.  The penalties the County assesses for

cannabis-adjacent code violations are outrageous. That a court went beyond the text of the law to reduce mandatory fines worth more than a property's value does not preclude Plaintiffs from bringing an Eighth Amendment challenge to the penalties they face. Their Excessive Fines claim is ripe.

## II. The County's Cannabis-Related NOVs Are Unconstitutional

### A. The Trial Court Disregarded Well-Pleaded Facts

Plaintiffs' opening brief detailed how the trial court abused the standard for assessing facts on a motion to dismiss in two ways. *First*, the court ruled that Plaintiffs' factual allegations were implausible. *Second*, the court relied on unspecified facts from 600 pages of judicially noticed records to rule that, as a general matter of law, the County's version of disputed facts was more believable. Blue-33-35.

On the first point, Plaintiffs emphasized that *Twombly/Iqbal*'s plausibility standard applies to legal claims—not factual allegations—and that a judge's disbelief of an allegation does not justify a motion to dismiss. Blue-18-21 (citing *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 827-28 (9th Cir. 2015), and *In re Gilead Sci. Secs. Lit.*, 536 F.3d 1049, 1057 (9th Cir. 2008)). In response, the County does not dispute that the trial court abused the *Twombly/Iqbal* plausibility standard for the reasons Plaintiffs articulated. Its failure to do so forfeits any argument that Plaintiffs' claims

were implausible.  *See, e.g.*, *Jensen v. EXC, Inc.*, 82 F.4th 835, 847 (9th Cir. 2023) (appellees' failure to raise an argument in their answering brief forfeited that argument).

As for the court's abuse of judicial notice, Plaintiffs explained that a court at the motion-to-dismiss stage must specify which facts it judicially notices and not construe competing inferences against Plaintiffs.  Blue-21-22 (citing *Khoja v. Orexigen Thera., Inc.*, 899 F.3d 988, 999-1000 (9th Cir. 2018)).  The County responds to a different point.  It asserts that its documents were all susceptible to judicial notice and that the court did not convert the motion to dismiss into summary judgment.  Red-37.  Plaintiffs have not argued otherwise on appeal; the County's preservation argument about issues Plaintiffs don't raise is irrelevant.[2]  *See* Red-34.

The issue before this Court is how the trial court used the documents it judicially noticed.  Blue-13, -17-19, -21-22.  Even when records are susceptible to judicial notice, the court must still "clearly specify" which facts it noticed and grant factual inferences in Plaintiffs' favor.  *Khoja*, 899 F.3d at 999-1000.  The court did neither.  Instead, the court ruled broadly that it believed the County's story more than Plaintiffs' allegations.  Without

---

[2] When Plaintiffs objected, they could not have anticipated the court's failure to specify which facts it noticed or its construction of disputed facts in the County's favor.  The court did not commit those errors until its decision to dismiss the case.  Plaintiffs could not, therefore, have forfeited their challenge to those errors.

identifying a single judicially noticed fact that contradicted Plaintiffs' allegations, the court drew its own conclusions about what happened.

If there were a judicially noticeable basis for the court's conclusions, the County would have pointed to the exact record and explained which facts conclusively contradict Plaintiffs' allegations. *But see* Red-35-36 (confusing length for specificity). But neither the court nor the County could specify a single fact that meets that standard. *Cf. Gilead*, 536 F.3d at 1055 (court must credit allegations unless contradicted by judicially noticed records not subject to reasonable dispute).

The lack of specificity is unsurprising given that the County's brief largely admits that it's been doing exactly what Plaintiffs alleged. For example, Plaintiffs said that the County charges people with violating the code to grow cannabis without any evidence that they grew cannabis, in large part because it relies on old satellite images to find permitting violations unrelated to cannabis. 4-ER-698-700, -736. Not only does the County fail to identify any contradictory facts, but it admits that it charged Plaintiffs with cannabis-related violations "using satellite data, as well as … [its] records." Red-18, 23, 29. Just as Plaintiffs also alleged (4-ER-700, -724, -736), the County acknowledged that it relies on satellite images to issue NOVs because Humboldt "is large, sparsely populated, and poorly

served by roads[.]"  Red-23.  Nevertheless, the court still used the guise of judicial notice, without any specific citations, to reject Plaintiffs' allegations, as if it were sitting as the fact-finder—not resolving a motion to dismiss.

The court also erred by noticing facts "subject to varying interpretations" or "reasonable dispute" and then construing those disputed facts in the County's favor.  *See Khoja*, 899 F.3d at 999-1000.  For example, as Plaintiffs explained, the trial court invoked judicial notice to blame the delays on some Plaintiffs for trying to work with the County while it blamed other Plaintiffs for not talking to the County at all.  Blue-21-22.  Faced with competing explanations for the County's delays, the trial court decided that whatever the reason, it was Plaintiffs' fault.  The court abused its discretion by drawing inferences against Plaintiffs based on its general sense, gleaned from unspecified records, that Plaintiffs are dishonest people.

## B. Plaintiffs Stated Five Claims for Relief

If the court had properly credited Plaintiffs' allegations, they stated five claims for relief.

### 1.  Procedural Due Process

The County insists that due process allows the government to charge anyone it wants with a civil offense, assess daily fines, exclude them from all discretionary benefits while the offense is pending, and then never provide

a hearing to resolve the charges. Until the government tries to collect penalties, the argument goes, there's nothing a federal court can do to stop the government from violating people's rights. Fortunately, that's not how the Constitution works.

### a. The NOVs Impact Plaintiffs' Rights

Plaintiffs alleged that the County must provide due process when it assesses penalties and excludes landowners from the permitting process. Remarkably, the County responds that Plaintiffs have no protected interest at stake in their enforcement actions. It claims that NOVs do not deprive Plaintiffs of use of their property or entitle the County to act. Red-53-55.

This argument is just another version of the County's theory that Plaintiffs cannot sue over their ineligibility for permits until they've obtained the permits the County won't give them. *See* Red-24. This cynical argument rebuts itself. The NOVs' fines accrue automatically, and the County has been depriving Plaintiffs of the full use and enjoyment of their property for years without *any* process. *See Harris v. County of Riverside*, 904 F.2d 497, 503 (9th Cir. 1990) (landowner entitled to due process "before the County deprived him of [the use and enjoyment of his land]"). Plaintiffs are entitled to a meaningful opportunity to challenge their NOVs.

### b. Inadequate Notice

Plaintiffs outlined the ways in which the NOVs fail to describe the alleged violations and how long the accused has to respond. Due process requires a notice to clearly state how someone violated the law and how they can raise a defense. Blue-32 (citing *In re Ruffalo*, 390 U.S. 544, 552 (1968)).

In response, the County lists the things its NOVs *do* include. Red-57. But that list omits a detailed description of which portion of the parcel is in violation of the code and how. For a landowner with several acres, a satellite image of their property and a list of offenses does not elucidate which part of the property was graded improperly. The lack of this critical component fails to inform the accused, in clear terms, how they allegedly violated the law and how they can raise a defense. Blue-32 (citing *Walters v. Reno*, 145 F.3d 1032, 1042 (9th Cir. 1998)).

Were the violation unclear, the County protests, Plaintiffs could have called and asked "for more information." Red-57. But that's true any time the government sends a deficient notice. The County also tries to say that recipients could always ask for more time. *See* Red-31. As Plaintiffs alleged, though, asking for more time does not stay the accrual of fines or the time to request a hearing. 4-ER-708-09. Asking for more time would have

forfeited Plaintiffs' appeal and left them no choice but to "work" with the County (*i.e.*, pay a settlement).

The County does not dispute that the NOVs fail to clearly state when the 10-day clock begins to run; it just tries to excuse the failure because each Plaintiff "promptly appealed" anyway. Red-57. As alleged, Plaintiffs simply mailed their notice as soon as they got them—even if it was more than 10 days beyond the date on the NOV. 4-ER-716-17, -722; -730-31; -735-36. The County's acceptance of their appeals does not excuse the NOVs' failure to explain when the 10-day clock began to run.

The NOV's inadequate description of the alleged nuisances and the time in which Plaintiffs could comply or appeal violates due process.

### c. Lack of Probable Cause

Plaintiffs alleged that the County lacked probable cause to charge them with cannabis-related violations because the evidence, at best, showed unrelated permitting violations. Blue-28-31. The County had no proof that any Plaintiff grew cannabis but still penalized them for doing so.

Like the court below, the County pretends that Plaintiffs' NOVs are just standard permitting violations. Red-58. But the County has trapped Plaintiffs in an extremely punitive scheme to punish cannabis growth without any evidence that they grew cannabis. The County insists that's

okay because "California law" lets local government set the standard of proof for violations, and the County chose a determination that "the violation has occurred." Red-58. Of course, local law does not trump the federal Constitution. It's unsurprising, then, that the County could not find a single federal case that approves issuing penalties without probable cause.

Requiring probable cause protects against the risk of erroneous deprivation. *United States v. $49,576.00 in U.S. Currency*, 116 F.3d 425, 428 (9th Cir. 1997). Filing charges and issuing fines without probable cause creates a "significant prospect" that the government will erroneously deprive people of their rights. *Santosky v. Kramer*, 455 U.S. 745, 764 (1982). A half century of precedent confirms that the County must have procedures to ensure that the facts justify its NOVs and corresponding penalties. *Yagman v. Garcetti*, 852 F.3d 859, 864-66 (9th Cir. 2017); *Stypmann v. City & Cnty. of San Francisco*, 557 F.2d 1338, 1343 (9th Cir. 1977).

That means the County must have probable cause to believe that someone charged with cannabis-related offenses *actually grew* cannabis— not merely that their property has *other* code violations. A satellite image of a greenhouse is not proof that someone graded their land or grew cannabis. Blue-39-40. Yet the County assumes that a greenhouse must

have cannabis inside based on "the prevalence of cannabis cultivation" in the region. Red-23. Charges based on Plaintiffs' proximity to areas where other people might grow cannabis "presents a high risk of erroneous deprivation, without any" likelihood that officers will "accurately predict culpability." *Ingram v. Wayne County*, 81 F.4th 603, 619 (6th Cir. 2023).

The County then compounds that risk by prohibiting landowners from obtaining permits before it provides a hearing to test its evidence. *See FDIC v. Mallen*, 486 U.S. 230, 242 (1988); *Barry v. Barchi*, 443 U.S. 55, 64 (1979).

### d. Undue Delay

The County almost never schedules hearings for the charges it brings without probable cause. 4-ER-710. Cyro asked for an appeal over five years ago and is still waiting. Yet the County claims a half-decade delay is not "improper" because neither county law nor due process set a "firm deadline." Red-59-62. The Supreme Court, however, has provided four factors to measure the constitutionality of a delayed hearing. *See* Blue-35 (citing *United States v. $8,850 in U.S. Currency*, 461 U.S. 555, 564-65 (1983)).

These factors confirm that the County's delay creates an undue risk of erroneous deprivation. Blue-35-36. The County admits that its

investigation is complete before it issues an NOV.  Despite that, it still relies on an unpublished Superior Court case that mistakenly reasoned that the delay gives the County time to develop its case.  *See* Red-61 (citing *White Circle Comm., LLC v. Humboldt County*, Case No. CV2000623 (Humboldt Cnty. Super. Ct. 2022)).  Nor does the delay have anything to do with COVID-19 (Red-31, -59), which came well after Cyro and Blu's NOVs and cannot excuse the ongoing delays.  The entire purpose of the delay is to create settlement pressure.  4-ER-708-11.

According to the County, however, the Court should construe Plaintiffs' well-pleaded allegations against them to absolve the County of its responsibility for the delay.  Red-60.  But the court, on a motion to dismiss, cannot blame the delay on some Plaintiffs talking to the County too much and others not talking to the County enough.  Blue-21-22.  The County is the only party that can schedule a hearing, and it refuses to do so.

The County's main argument is that its delays aren't prejudicial.  Red-61-62.  But that's not true.  Plaintiffs have alleged prejudice both from the additional fines that accrue during the delay and from their inability to obtain permits while their abatement case is pending.  Blue-35-36.  Fines accrue after the accused requests a hearing but before county law allows Code Enforcement to schedule a hearing.  A delay of more than 90 days

allows the maximum amount of fines to accrue.  And the prohibition on permits means the delay deprives Plaintiffs of their rights the entire time they wait for their hearing.  Four years of delays is not the *prompt* hearing the Constitution requires when there's an interim deprivation of rights. *Barchi*, 443 U.S. at 64; *see also United States v. Crozier*, 777 F.2d 1376, 1383-84 (9th Cir. 1985) (restraining use of property for years during litigation violated due process).

The County's cases about delayed appeals do not help its cause.  Red-61.  Indeed, those cases apply the same four-factor test in *$8,850 in U.S. Currency*, 461 U.S. at 564-65, on which Plaintiffs rely.  *E.g.*, *United States v. Antoine*, 906 F.2d 1379, 1382 (9th Cir. 1990).  Moreover, this Court in *United States v. Palma* concluded that a 32-month delay in processing an appeal *was* substantial and favored a ruling for the appellant.  7 F. App'x 748, 750 (9th Cir. 2001).  The only reason the delay did not violate due process in Palma's case was because he couldn't demonstrate prejudice.  *Id.* Plaintiffs' claim does not have the same shortcoming.

Finally, the County suggests that Plaintiffs could get all the certainty they need by "complying with the law" or "settling with the County or, at the very least, applying for the necessary permits."  Red-61.  None of these excuses the lack of due process.  A plaintiff could always avoid delay by

settling. The very reason Plaintiffs requested a hearing was to contest the County's charges. Forfeiting that right to avoid the County's delay does not solve the due-process problem. Nor does applying for permits. As Plaintiffs have explained repeatedly, they are categorically ineligible for permits— even those that would "abate" their violations. The County's reliance on the fact that Blu obtained a grading permit (Red-61) ignores that the County only issued it, four years after he requested one, because Blu settled his abatement case.

### e. Exhaustion

Finally, the County tries to resuscitate its administrative-exhaustion argument from below. Without support, the County says that Plaintiffs cannot raise a due-process challenge to the prohibitive cost of administrative hearings until they exhaust their administrative remedies. Red-62-63. A plaintiff does not need to exhaust a municipality's administrative remedies before bringing constitutional claims under § 1983. *Patsy v. Bd. of Regents*, 457 U.S. 496, 500-02 (1982).

### 2. Substantive Due Process

Plaintiffs alleged that the County violates substantive due process by charging cannabis-related code violations with indifference to whether the accused grew cannabis. By alleging that the violations relate to cannabis,

the County raises the minimum fine for each offense from $1 to $6,000 *per day* and prevents Plaintiffs from obtaining the permits they need to cure their permitting violations.

The County enforces its cannabis-abatement orders in two arbitrary ways. *First*, the County imposes a cannabis enhancement for regular code violations without evidence of cannabis growth. *Second*, the County penalizes innocent purchasers for the past growth of prior owners. Blue-38-45. Both policies violate due process because they lack any "substantial relation to the public health, safety, morals, or general welfare." *Halverson v. Skagit County*, 42 F.3d 1257, 1261 (9th Cir. 1994).

The County responds with more sleight of hand. Once again ignoring the cannabis enhancements at issue, the County says it has probable cause for other permitting violations. It says the government has an unassailable interest in requiring land-use permits because permits do things like help prevent deaths during earthquakes. Red-63-64. Plaintiffs don't disagree; earthquakes just have nothing to do with this case. The County's general interest in land-use permits cannot justify its enforcement of cannabis penalties against anyone who built a greenhouse without a permit.

When defending its need for punitive enforcement regime, though, the County flips back and makes the case all about cannabis again. Red-67-

68.  Plaintiffs have no right to grow cannabis, the County retorts.  But that's just more misdirection.  Plaintiffs weren't growing cannabis and assert no right to do so.  They don't question the County's interest in regulating cannabis—only whether punishing people who haven't grown cannabis is a legitimate way to further that interest.

Based on the assumption that *some* residents are growing cannabis without a permit (Red-23), the County uses dragnet enforcement that necessarily catches innocent people.  That's okay, the County insists, because innocent victims can always just settle their case and pay the cost of the County prosecuting them by mistake.  But increased odds of catching guilty people do not justify punishing the innocent.  Nor do conditions that make investigations difficult.  The County's arbitrary enforcement violates Plaintiffs' substantive right to due process.

So does the County's use of cannabis penalties against innocent purchasers.  Blue-42-45.  Contrary to the County's claim that no fundamental rights are at stake (Red-68), our nation has long recognized a fundamental right to punishment "predicat[ed] … only upon personal guilt." *St. Ann v. Palisi*, 495 F.2d 423, 425 (5th Cir. 1974).  In cases involving a central liberty interest, the Supreme Court has "always been careful not to 'minimize the importance and fundamental nature'" of due process.  *Foucha*

*v. Louisiana*, 504 U.S. 71, 80 (1992) (citation omitted); *Witt v. Dep't of Air Force*, 527 F.3d 806, 817-18 (9th Cir. 2008) (heightened scrutiny applies in substantive-due-process inquiry "[w]hen a fundamental right is recognized"). The County's policy of holding new property owners responsible for a past owner's cannabis growth—not merely still-existing nuisances on the property—violates their fundamental right to have punishment predicated on personal guilt.

The government's interest in punishing innocent people for things they didn't do is neither legitimate nor compelling—whether the penalties result from a failure to investigate, as is the case with Blu and Cyro, or because the County is punishing someone else's conduct, as is the case with Rhonda and the Thomases.

The County tries to avoid this point by relying on Third Circuit cases that apply the conscience-shocking standard instead of the legitimate-interest standard. Red-66-67 (citing *Highway Materials, Inc. v. Whitemarsh Twp.*, 386 F. App'x 251 (3d Cir. 2010); *Guiliani v. Springfield Twp.*, 238 F. Supp. 3d 670, 699 (E.D. Pa. 2017) (allegation that official acted with improper motive). This argument misunderstands that the conscience-shocking standard applies only to the acts of executive officials rather than a formal policy or ordinance. *See Pompey Coal Co. v. Borough of Jessup*,

No. 3:20-cv-358, 2021 WL 1212586, at *7-8 (M.D. Pa. Mar. 31, 2021) (distinguishing the standard). Because Plaintiffs challenge an official policy, they need only show that no legitimate interest supports that policy. *See id.*

The County violates due process by issuing cannabis-related NOVs without regard for probable cause of cannabis growth. The policy is unsupported by a legitimate government interest and necessarily results in arbitrary enforcement. *See Halverson*, 42 F.3d at 1262.

Finally, the County's floodgates argument gets it nowhere. Red-68. The County's cannabis-abatement program is not a typical land-use dispute over fines for an unabated nuisance. The underlying violations here are secondary to the cannabis charge, which triggers the penalty enhancements and traps the accused in a special process designed to punish and deter cannabis growth. This action is in federal court because the County issues unpayable penalties and refuses to let people abate nuisances or defend themselves before a judge. A challenge to any similar enforcement regime would also belong in federal court.

### 3.  Unconstitutional Conditions

Plaintiffs allege that the County imposes unconstitutional conditions on permits unrelated to abatement orders. Blue-45-49. For example, Blu faced abatement orders for his unpermitted pond. The County refused to

permit his pond or schedule a hearing for four years. While Blu waited, he needed other permits for his property that had nothing to do with the pond. In March 2022, he applied for the Safe Home program to obtain an as-built permit for his house. The County, however, put an indefinite hold on his application until he agreed to settle his abatement case. Conditioning his Safe Home permit on the settlement of an unrelated abatement case was unconstitutional because the permit Blu sought had no nexus to the "permit condition extracted." *Dolan v. City of Tigard*, 512 U.S. 374, 386 (1994). Blu seeks redress from the County's coercive settlement.

Similarly, Rhonda sought a septic permit to begin building housing on a vacant parcel of land. The County told her she was ineligible for any permits until she settled her abatement case—even though her predecessor-in-interest's cannabis growth had nothing to do with the housing she wanted to build. A standard settlement in the County's abatement cases requires the accused to (1) waive their right to appeal; (2) pay the County money; (3) waive their Fourth Amendment right against unreasonable searches and seizures in perpetuity; and (4) agree to not transfer ownership of their property. 4-ER-721-23. Regardless of whether those conditions relate to the abatement settlement, they lack a sufficient nexus to permits unrelated to abatements like the ones for Blu's Safe Home and Rhonda's septic.

The County's rebuttal is familiar by now: It tries to confuse things with irrelevant truisms. Red-71-75. Plaintiffs agree, for instance, that Blu has no right to maintain illegal construction. He hasn't claimed one. Blu has no more right to an as-built permit than Rhonda has to her septic permit. But that doesn't excuse the unconstitutional conditions the County has placed on those permits. The government cannot use its discretionary permitting power to coerce people into giving up *unrelated* constitutional rights, as the County has here. *See Koontz v. St Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604, 608, 612 (2013).

It does not save the County to say that Blu "voluntarily" relented to the County's coercive bargain,[3] nor that Rhonda turned it down. Red-71. The government's attempt to impose an unconstitutional condition is sufficient to state a claim for damages. *Koontz*, 570 U.S. at 606, 619.

The conditions the County imposes on permits unrelated to cannabis-abatement orders don't further its interest in resolving those abatements. On the contrary, the wholesale prohibition on permits just leaves properties out of compliance while the accused waits for the County to schedule an appeal hearing. The years-long delay in scheduling those hearings

---

[3] The County also suggests that Blu's settlement waives his claims. Blu did not, however, sign a settlement agreement. 4-ER-728-29. His ad hoc deal with Director John Ford did not require his waiver of rights. He retains his damages claim for the coercive settlement and completed due-process violations. *See Carey v. Piphus*, 435 U.S. 247, 266-67 (1978).

undermines any argument that the County is concerned with the health-and-safety goals of requiring permits. The condition on unrelated permits merely increases the pressure to accept the County's settlement offer, exacerbating the type of coercion that the unconstitutional-conditions doctrine exists to prevent.

### 4. Excessive Fines

#### a. Plaintiffs' Permitting Violations Do Not Justify Multimillion Dollar Fines

Plaintiffs face millions of dollars in cannabis-related penalties even though they didn't grow cannabis. To argue that a $7,470,000 fine for someone else's cannabis growth is not grossly disproportionate, as a matter of law, the County identifies a few times that California courts have held that multimillion-dollar fines were constitutional. Red-77-79.

For one, none of the County's cases were decided on a motion to dismiss. *Cf. Langley v. City of San Luis Obispo*, No. 21-cv-07479, 2022 WL 18585987, at *4 (C.D. Cal. Feb. 7, 2022) (an excessive-fines defense "raise[s] numerous factual issues inappropriate for resolution on a motion to dismiss").

The California cases that the County cites are also factually off base. Those cases approved large fines for highly culpable offenders who caused

serious harm to the community and who could afford to pay the fines. *See Lent v. Cal. Coastal Comm'n*, 62 Cal. App. 5th 812, 829, 857-58 (2021) (Lent's closure of a public beach for private profit was "particularly egregious," done "willfully," "deliberately," and with a "high degree of culpability"); *Sweeney v. Cal. Reg'l Water Quality Ctrl. Bd.*, 61 Cal. App. 5th 1093, 1138-40 (2021) (Sweeney acted with "willful indifference," "knowing rejection," and "high culpability" when he committed "major" environmental violations that "adversely impacted" endangered species); *People v. Braum*, 49 Cal. App. 5th 342, 361-63 (2020) (Braum "flagrant[ly]" and "continu[ally]" disobeyed a court order by allowing his tenants to operate a cannabis dispensary "within 35 feet of an elementary school").

By contrast, Plaintiffs alleged that they did not grow cannabis, committed no willful violation of the law, harmed nobody, and cannot afford to pay the fines the County assessed. The County has fined them millions of dollars for someone else's cannabis growth "to scare the panties off" them and force them into settlements. Blue-5-6. These massive fines are completely disproportionate to any issues on Plaintiffs' properties.

### b. Plaintiffs Did Not Cultivate Cannabis

The County tries to excuse its decision to fine Plaintiffs millions of dollars for something they didn't do by saying that "they knowingly

maintain illicit conditions on their property," for which they are responsible under state and local laws.  Red-79.

Plaintiffs agree that, as landowners, they are responsible for dangerous conditions on their property.  But the penalty enhancement is not for dangerous conditions.  Rather, it's designed to punish cannabis growth that was either gone before they purchased their properties or never existed.  By claiming the offenses are still cannabis-related, the County increases the minimum penalty by 600,000% and forbids the landowner from obtaining permits to remedy the violations.  These enhancements attach without individual culpability.  Blue-57-59.

An innocent purchaser must "return the land to its pre-cannabis state," regardless of who failed to obtain the permit, regardless of who grew cannabis or when, and regardless of whether the current condition is dangerous.  Blue-63-65.  To make things worse, destroying structures doesn't even make the fines go away.  Look at Rhonda's second set of NOVs.  When she first received NOVs for a prior owner's unpermitted hoophouses on old logging flats that a different prior owner graded without a permit, she took down the hoophouses and contested the cannabis-enhanced penalties.  But because she refused to settle, the County issued new NOVs that fined her for conditions that no longer existed.  The County still fined her $83,000

per day for cannabis and hoophouses that used to be there. Blue-11. These fines have nothing to do with public safety; they are designed to punish cannabis growth without regard for culpability.

Indeed, the County admits that its penalties address "the harm of unlawful cannabis cultivation on [the] Thomases' and Olsen's properties." Red-80. But the County's interest in regulating cannabis does not justify punishing people who have not grown cannabis.

### c. The County's Demolition Orders Are Punitive

The County's cannabis-abatement orders require Plaintiffs to return the land to its pre-cannabis state as punishment for growing cannabis. Because the orders are punitive, the Eighth Amendment applies. Blue-63-65. The County again acts like cannabis-abatement orders are typical nuisance abatements to remedy dangerous conditions. Red-76. As Plaintiffs alleged, however, the primary purpose of the demolition orders is to punish cannabis growth, without regard for a structure's safety or permitability. 4-ER-706.

### 5. Jury Right

Plaintiffs alleged that the Seventh Amendment applies when the government imposes fines for land-use violations. The County retorts, without citation, that the jury right does not apply to actions for civil

penalties because they "are enforced in equity, not law." Red-81. The Supreme Court has said the opposite. *See Tull v. United States*, 481 U.S. 412, 418-25 (1987). An action "to impose punishment," seek retribution, or deter conduct, as opposed to one "to disgorge profits" (an equitable remedy) requires a jury. *Id.*

The County's desire for cheap and efficient prosecutions does not allow it to "conjure away the Seventh Amendment by mandating that traditional legal claims be brought ... to an administrative tribunal." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52 (1989). Contrary to the County's reading of *Atlas Roofing*, the Supreme Court has emphasized that the government cannot limit the jury right merely because "proceedings have been placed in 'an administrative forum with which the jury would be incompatible.'" *Granfinanceria*, 492 U.S. at 61 (quoting, with disapproval, *Atlas Roofing Co. v. OSHA*, 430 U.S. 442, 450 (1977)); *see also Granfinanceria*, 492 U.S. at 79 (White, J., dissenting) (observing that the Court overruled large parts of *Atlas Roofing*).

## III.  Reassignment Would Prevent Injustice

The County's glowing endorsement of the magistrate judge isn't surprising. Red-83. The judge cast aside impartiality to rule in the County's

favor on every argument, even some—like immunity and improperly sued officials—that hardly made any sense.

Anything but "detailed" (Red-83), the judge's dismissive and conclusory approach left Plaintiffs with no idea which allegations were implausible or contradicted by the County's 600 pages of exhibits. The court disregarded the standard of review and found facts in the County's favor, without any specific citations, and made perfectly clear that he did not believe Plaintiffs, even though the law required him to do so. *Cf. Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1034 (9th Cir. 2012); *United States v. Reyes*, 313 F.3d 1152, 1160 (9th Cir. 2002).

When Plaintiffs filed their complaint, they had no reason to expect the magistrate judge would be partial to the County. Their initial consent to his jurisdiction does not diminish this Court's authority to reassign the case to "preserve the appearance of justice." *United States v. Rivera*, 682 F.3d 1223, 1237 (9th Cir. 2012). The magistrate has already prejudged Plaintiffs and their claims. If this Court were to remand the case to the same judge, and he once again decides every issue for the County, it would not look like justice. A new judge is necessary.

# CONCLUSION

This Court should REVERSE the dismissal of each cause of action stated in the First Amended Complaint and remand the case to a new district judge.

Dated: December 22, 2023                    Respectfully Submitted,

                                             /s/ Jared McClain

**PILLSBURY WINTHROP SHAW**                 **INSTITUTE FOR JUSTICE**
**PITTMAN LLP**                             Jared McClain
Thomas V. Loran III                         901 N. Glebe Road, Suite 900
Four Embarcadero Center, 22nd Floor         Arlington, VA 22203
San Francisco, CA 94111                     (703) 682-9320
(415) 983-1865                              jmcclain@ij.org
thomas.loran@pillsburylaw.com

Derek M. Mayor                              Robert Johnson
500 Capitol Mall, Suite 1800               16781 Chagrin Blvd., Suite 256
Sacramento, CA 95814                        Shaker Heights, OH 44120
(916) 329-4703                             (703) 682-9320
derek.mayor@pillsburylaw.com               rjohnson@ij.org

*Counsel for Plaintiffs-Appellants*

**FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS**
**9TH CIR. CASE NUMBER 23-15847**

I am the attorney or self-represented party.

**This brief contains 6,982 words,** including 0 words manually counted in any visual images, and excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  [ ] it is a joint brief submitted by separately represented parties;
  [ ] a party or parties are filing a single brief in response to multiple briefs; or
  [ ] a party or parties are filing a single brief in response to a longer joint brief.

[] complies with the length limit designated by court order dated _____.

[] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Dated: December 22, 2023                    /s/ Jared McClain
                                            Jared McClain
                                            *Counsel for Plaintiffs-Appellants*