**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 30 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CORRINE MORGAN THOMAS; et al., | No. 23-15847 |
| Plaintiffs-Appellants, | D.C. No. 1:22-cv-05725-RMI |
| v. | |
| COUNTY OF HUMBOLDT, California; et al., | MEMORANDUM* |
| Defendants-Appellees, | |
| and | |
| VIRGINA BASS, Chair, Board of Supervisors, | |
| Defendant. | |

Appeal from the United States District Court
for the Northern District of California
Robert M. Illman, Magistrate Judge, Presiding

Argued and Submitted April 9, 2024
San Francisco, California

Before: PAEZ and SUNG, Circuit Judges, and FITZWATER,** District Judge.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Sidney A. Fitzwater, United States District Judge for the Northern District of Texas, sitting by designation.

This putative class action arises out of Humboldt County's system of penalties and fees involving cannabis abatement. Plaintiffs—residents of Humboldt County—filed this action under 42 U.S.C. § 1983, alleging a number of constitutional claims against the County.[1] The district court dismissed all claims in their entirety on various grounds. We have jurisdiction under 28 U.S.C. § 1291. We reverse in part, affirm in part, and remand for further proceedings consistent with this disposition.

**1.** We first conclude that Plaintiffs have standing to bring both their procedural and substantive due process claims. Accepting Plaintiffs' well-pleaded factual allegations as true and drawing all reasonable inferences in their favor, *see Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988), Plaintiffs have plausibly alleged that they received Notices of Violations (NOVs) for failure to comply with the County's cannabis abatement program and that the County imposed penalties against them under the County's administrative penalty scheme. As a consequence of these NOVs and penalties, Plaintiffs allege they have suffered emotional and psychological distress as well as significant financial uncertainty. Plaintiffs have thus alleged concrete injuries caused by the County's actions. *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1109 (9th Cir. 2014) (finding emotional

---

[1] In a separately filed opinion, we address Plaintiffs' claim that the County's system of penalties and fees violates the Eighth Amendment's Excessive Fines Clause.

distress cognizable); *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1117 (9th Cir. 2017) (observing that "anxiety, stress, concern, and/or worry about [the plaintiff's] diminished employment prospects" are cognizable injuries). In addition, Plaintiffs have plausibly alleged that they applied for land-use permits but were denied as a result of the County's blanket policy of refusing to issue permits to people facing cannabis-abatement orders. This is also sufficient to establish a concrete injury for standing purposes. *See Carpinteria Valley Farms, Ltd. v. Cnty. of Santa Barbara*, 344 F.3d 822, 830 (9th Cir. 2003).

    **2.** Plaintiffs also have standing to maintain their claims under the unconstitutional-conditions doctrine. Plaintiffs allege that the County has conditioned land-use permits unrelated to cannabis or cannabis abatement on the settlement of separate (and contested) cannabis-related violations. Plaintiffs further allege that such leveraged settlements, whether accepted or not, would require them to pay penalties unrelated to the land-use permits, pay administrative fees unrelated to the land-use permits, and waive their rights to an administrative hearing to contest an NOV. Under *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013), this form of conditioning gives rise to a "constitutionally cognizable injury." *Id.* at 607.

    **3.** Turning to the merits, Plaintiffs allege that the County's system of imposing administrative penalties and fees for purported cannabis-related

violations deprived them of procedural due process. "To evaluate a procedural due process claim, we weigh the [factors set out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)]: '(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements.'" *Diamond S.J. Enter., Inc. v. City of San Jose*, 100 F.4th 1059, 1069 (9th Cir. 2024) (quoting *Yagman v. Garcetti*, 852 F.3d 859, 864 (9th Cir. 2017)).

As to the first factor, Plaintiffs have plausibly alleged that cognizable private interests are at stake, including both their finances and the full use and enjoyment of their property. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571-72 (1972); *Harris v. Cnty. of Riverside*, 904 F.2d 497, 503 (9th Cir. 1990). In addition, Plaintiffs allege that these interests are significant. For example, Plaintiffs allege that the penalties imposed against them can reach millions of dollars. The minimum penalties accrued by Plaintiffs and other responsible parties are also significant, especially when compared to the average income of the residents subject to the County's cannabis regulatory scheme. *Cf. Nozzi v. Hous. Auth. of Los Angeles*, 806 F.3d 1178, 1193 (9th Cir. 2015). In combination with the alleged deprivation of access to land-use permits for those with outstanding cannabis-related NOVs, this impact suggests the existence of substantial private

4

interests.

As to the second factor, taking Plaintiffs' allegations in the amended complaint as true, the risk of erroneous deprivation through the County's administrative procedures weighs strongly in Plaintiffs' favor. Plaintiffs allege a slew of procedural irregularities that heighten the probability of an erroneous deprivation. These include, for example, (1) vague notices, *cf. Nozzi*, 806 F.3d at 1194, that fail to describe the specific location of a violation, or the date on which the ten-day clock to appeal the violation begins to run; (2) the imposition of penalties and fees without a "reasonably reliable basis," *Yagman*, 852 F.3d at 864 (quotation omitted); *cf. Stypmann v. City & Cnty. of San Francisco*, 557 F.2d 1338, 1343 (9th Cir. 1977), both by charging property owners with violations based on unconfirmed, imprecise, or outdated satellite images and by holding property owners accountable for previous owners' cannabis-related violations, even when the violations were not properly recorded;[2] (3) undue delays in scheduling appeal hearings, *cf. United States v. Crozier*, 777 F.2d 1376, 1383-84 (9th Cir. 1985); and (4) potentially biased hearing officers, *cf. Yagman*, 852 F.3d at 865. These alleged deficiencies are likely to result in erroneous deprivations, and they are much more likely to do so than the procedures that were in place before the County enacted the

---

[2]     Relatedly, Plaintiffs allege that the County does not record existing violations against the subject properties, thereby depriving subsequent purchasers of constructive knowledge of previous violations.

5

cannabis-abatement regulatory scheme challenged here.

Finally, Plaintiffs have plausibly alleged that there is no clear governmental interest in maintaining this administrative penalty system. Plaintiffs allege that the County's previous system was significantly different. The previous system gave property owners at least seventy-five days to abate violations. It also required a hearing before the Board of Supervisors, and the Board could not assess a penalty before such a hearing. And though the interests identified by the County—"environmental quality, residential quality of life, and fair competition with those who bear the burdens to operate in nascent legal market for cannabis"—are undoubtedly important, it is far from obvious how these interests are served by the County's imposing significant heavy penalties for vague alleged violations with minimal procedural safeguards. *Cf. Stypmann*, 557 F.2d at 1344.

In sum, we conclude that Plaintiffs have plausibly alleged that the County's system of administrative penalties violated their procedural due process rights. We therefore reverse the district court's dismissal of this claim.

**4.** Plaintiffs further allege that the County's system of penalties and fees violates their substantive due process rights. "A substantive due process claim involves the balancing of a person's liberty interest against the relevant government interests." *Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1438 (9th Cir. 1996). Importantly, "the protection from governmental action

provided by substantive due process has most often been reserved for the vindication of fundamental rights." *Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1261 (9th Cir. 1994). "Accordingly, where . . . the plaintiffs rely on substantive due process to challenge governmental action that does not impinge on fundamental rights, we do not require that the government's action actually advance its stated purposes, but merely look to see whether the government could have had a legitimate reason for acting as it did." *Id.* (internal quotation marks and citation omitted). In other words, to establish a substantive due process violation based on the County's procedures in the absence of an infringed fundamental right, Plaintiffs "must show the procedures are 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare.'" *Yagman*, 852 F.3d at 867 (quoting *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1058 (9th Cir. 2012)). "This is an 'exceedingly high burden.'" *Id.* (quoting *Samson*, 683 F.3d at 1058).

We conclude that Plaintiffs have plausibly alleged both a violation of a fundamental right and that the County lacks "any reasonable justification in the service of a legitimate governmental objective" in its enforcement of the cannabis abatement scheme. *Id.* (quoting *Samson*, 683 F.3d at 1058).

First, Plaintiffs have sufficiently alleged that the County has violated their fundamental due process right to a showing of personal guilt. *See Scales v. United*

7

*States*, 367 U.S. 203, 225 (1961). Plaintiffs rely on the doctrine that "[p]enalizing conduct that involves no intentional wrongdoing by an individual can run afoul of the Due Process Clause." *Rucker v. Davis*, 237 F.3d 1113, 1124 (9th Cir. 2001), *rev'd sub nom. on other grounds Dep't of Hous. & Urb. Dev. v. Rucker*, 535 U.S. 125 (2002); *see also Sw. Tel. & Tel. Co. v. Danaher*, 238 U.S. 482, 490-91 (1915) (similar). Plaintiffs' most compelling illustration of this violation is their allegation, which we must accept as true, that the County institutes administrative proceedings—resulting in the imposition of heavy fines—for facilitating the cultivation of cannabis, even when it knows or should know that the party is not responsible. For example, Plaintiffs allege that the County has repeatedly charged new property owners with the cannabis-related offenses of previous owners, thereby severing the administrative proceedings from individual culpability.

Second, Plaintiffs have adequately alleged that the County's administrative penalty procedures are "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." *Yagman*, 852 F.3d at 867 (quoting *Samson*, 683 F.3d at 1058)).

The district court dismissed Plaintiffs' allegations as "implausible," underscoring that Plaintiffs "purchased properties with existing code violations." This reasoning, however, ignores Plaintiffs' well-pleaded allegations that the County does not record existing violations against the property, thereby depriving

8

subsequent purchasers of the most common method of learning about claims against the property.

Moreover, the district court disregarded Plaintiffs' allegations that the County imposed fees on the basis of violations *related to the cultivation of cannabis*, even in cases where it knew or should have known that the current landowners were not responsible for the underlying violation. It is irrelevant that Plaintiffs were aware of other property violations because the substantive due process claims are based on the missing connection between the NOVs—which are predicated on cannabis-related conduct—and Plaintiffs' lack of culpability. Under these circumstances, a practice of charging subsequent owners of a property with the cannabis-based offenses of the previous owners cannot be said to have "any reasonable justification in the service of a legitimate governmental objective." *Id.*; *see also Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1410 (9th Cir. 1989), *overruled on other grounds by Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996).

**5.** Plaintiffs have also plausibly alleged that the County's procedure for evaluating land-use permit applications violates the unconstitutional conditions doctrine. "[T]he unconstitutional conditions doctrine . . . vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz*, 570 U.S. at 604. The Supreme Court has

9

specifically recognized a "special application" of this doctrine that "protects the Fifth Amendment right to just compensation for property the government takes when owners apply for a land-use permit." *Id.* This doctrine "prohibits the government from 'deny[ing] a benefit to a person because he exercises a constitutional right' or 'coercing people into giving [those rights] up' by imposing unconstitutional conditions on the use of private land." *Ballinger v. City of Oakland*, 24 F.4th 1287, 1298 (9th Cir. 2022) (citing *Koontz*, 570 U.S. at 604, 612). The Supreme Court has extended this prohibition to conditioning land-use permits on monetary exactions and mandatory grants of easements. *See Koontz*, 570 U.S. at 612. Such conditions are only permissible if there is a "'nexus' and 'rough proportionality' between the property that the government demands and the social costs of the applicant's proposal." *Id.* at 605-06 (citations omitted).

Here, Plaintiffs allege that the County violates the unconstitutional conditions doctrine by conditioning land-use permits on the settlement of cannabis-related violations unrelated to the desired permits. Indeed, Plaintiffs allege that the County has withheld land-use permits unrelated to cannabis abatement until Plaintiffs agree to settle their cannabis abatement cases. In so doing, Plaintiffs have alleged that the County aims to coerce property owners into accepting responsibility for violations they contend they did not commit, paying a significant fine related to such violations, and forgoing their right to an administrative hearing.

10

Such conditions, even those based on settlements, are not permitted under the unconstitutional conditions doctrine where there is no "close nexus" between the conditions imposed and the permits requested. *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1399 (9th Cir. 1991).

In discussing this claim, the district court ignored Plaintiffs' well-pleaded allegations and misapplied the law. For example, the court determined that no plaintiff had applied for a non-remedial land-use permit during the pendency of their cannabis-abatement case, even though Plaintiffs specifically allege otherwise. In addition, the district court's observations about the County's eventual acceptance of one such application—specifically, that it was ultimately "accepted and *granted* on the spot"—ignored Plaintiffs' allegations that (1) the County had previously expressed it would not do so until that plaintiff settled, and (2) the County eventually did so only after that plaintiff paid administrative fees related to the "baseless cannabis charges" the County had pursued against him and ultimately dropped. In failing to recognize that the conditioning of permits on the settling of unrelated violations is a viable constitutional claim, the district court disregarded the Supreme Court's admonition that "regardless of whether the government ultimately succeeds in pressuring someone into forfeiting a constitutional right, the unconstitutional conditions doctrine forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise

11

them." *Koontz*, 570 U.S. at 606.

**6.** Plaintiffs' last substantive claim alleges that the County's enforcement of its system of administrative penalties and fees violates the Seventh Amendment. As Plaintiffs acknowledge, however, this claim is not viable under our court's selective-incorporation precedent. *See Jackson Water Works, Inc. v. Pub. Utils. Com.*, 793 F.2d 1090, 1096 (9th Cir. 1986). Thus, we do not address the merits of the claim, and we affirm the district court's dismissal.

**7.** The district court erred in dismissing Plaintiffs' facial and as-applied claims because they were not brought within two years of the law's enactment. The statute of limitations begins to run when a plaintiff "knows or has reason to know of the actual injury," not necessarily when a local ordinance was enacted. *Scheer v. Kelly*, 817 F.3d 1183, 1188 (9th Cir. 2016) (quoting *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008)).

At the earliest, Plaintiffs' facial claims accrued when they received their initial NOVs, the earliest point at which they had notice they were subject to the County's cannabis abatement scheme. Because at least some plaintiffs, for example the Thomases, allege that they received their initial NOVs within two years of filing suit, Plaintiffs have a timely facial challenge.[3]

---

[3] Because at least the Thomases have a timely facial challenge, we do not need to address whether the other named plaintiffs have timely facial challenges.

The district court also erred in categorically dismissing Plaintiffs' individual as-applied claims as untimely. First, at least four named Plaintiffs have alleged timely as-applied procedural due process claims. Plaintiffs allege that the County violated their rights to procedural due process when it deprived them of property interests—by imposing penalties and/or denying permits—with inadequate notice, lack of probable cause, and lack of a timely opportunity to be heard. The earliest these claims could have accrued is when a deprivation occurred. The Thomases and Olson have plausibly alleged that they experienced unconstitutional deprivations during the limitations period because they allege that the County imposed baseless penalties on them during this period. Although Graham's NOV was issued (and daily penalties were imposed) well before the limitations period, he alleges that during the limitations period, he was denied a permit due to his abatement case. Because he alleges that the abatement case had no reasonable basis and that he was denied a timely hearing, he too has plausibly alleged a procedural due process violation during the limitations period.

The remaining named Plaintiff, Glad, alleges a claim of undue delay in scheduling a hearing about his alleged Code violation. Glad would have known or had reason to know of this injury, at the earliest, when the delay became unreasonable. Because we do not engage in fact-finding, determining whether the delay became unreasonable during the limitations period is a task for the district

13

court on remand. *See Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206-07 (9th Cir. 1995); *United States v. $8,850 in U.S. Currency*, 461 U.S. 555, 564-65 (1983) (describing four factors to measure constitutionality of delay under the analogous, Sixth Amendment context). We therefore reverse the district court's dismissal of Plaintiffs' individual as-applied procedural due process challenges as untimely.

Second, the Thomases, Olson, and Graham have alleged timely as-applied substantive due process challenges for similar reasons as above. Plaintiffs knew or should have known of their substantive due process injuries at each point the County imposed a penalty on them unrelated to any personal guilt, with each such penalty being a new, distinctly actionable claim. *See Flynt v. Shimazu*, 940 F.3d 457, 462 (9th Cir. 2019) ("When the continued enforcement of a statute inflicts a continuing or repeated harm, a new claim arises (and a new limitations period commences) with each new injury."). During the limitations period, the Thomases and Olson allege that the County imposed monetary penalties, and Graham alleges that the County denied him a permit, because of alleged violations involving no wrongdoing by them. We agree with the district court, however, that Glad's substantive due process claim is untimely. He does not allege that the County imposed any penalties—such as monetary penalties, the denial of a permit, or the deprivation of the use of his land—during the limitations period. We thus affirm

14

the dismissal of Glad's as-applied substantive due process claim but reverse as to the other plaintiffs.

Third, Plaintiffs' as-applied unconstitutional conditions claims begin to accrue when the County conditioned a permit on entering into such a settlement agreement. The Thomases, Olson, and Graham allege that this happened to them during the limitations period. Glad, however, does not allege ever seeking a land-use permit, so he has not stated an individual claim to begin with. Thus, we affirm the district court's dismissal of Glad's as-applied unconstitutional conditions claim but reverse as to the other plaintiffs.

    **8.** Finally, we conclude that reassignment of this case on remand is not warranted. "In determining whether reassignment is proper, we consider: (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of justice." *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1034 (9th Cir. 2012) (quoting *United States v. Arnett*, 628 F.2d 1162, 1165 (9th Cir. 1979)). "The first two of these factors are of equal importance, and a finding of one of them would support a remand to a different

15

judge." *Id*. (quoting *United States v. Sears, Roebuck & Co.*, 785 F.2d 777, 780 (9th Cir. 1986)).

Here, although the district court's dismissiveness of Plaintiffs' well-pleaded allegations is cause for concern, we trust that the "original judge would [not] . . . have substantial difficulty in putting out of his . . . mind previously-expressed views or findings determined to be erroneous." *Id*. (quoting *Arnett*, 628 F.2d at 1165). Reassignment upon remand is thus not warranted.

**REVERSED in part, AFFIRMED in part, and REMANDED.**

Appellants shall recover their costs on appeal.